**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Samuel Lee JOHNSON and James Earl
Young, Sr., Defendants-Appellants.**

**No. 71–2237**

**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1972.

---

\*  Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al, 5th Cir. 1970, 431 F.2d 409, Part I.

James W. Nobles, Jr., Jackson, Miss., for Johnson.

Jack H. Young, Jackson, Miss., (court appointed), for Young.

Robert E. Hauberg, U. S. Atty., Daniel E. Lynn, James B. Tucker, Asst. U. S. Attys., Jackson, Miss., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge.

Samuel Lee Johnson and James Earl Young, Sr. appeal from their conviction for conspiracy to violate Section 2314, Title 18, U.S.C., by causing falsely made and forged securities (money orders) of the Travelers Express Company, to move in interstate commerce from Vicksburg and Jackson, Mississippi, to Fairbault, Minnesota, in violation of the general conspiracy statute, Section 371, Title 18, U.S.C. The indictment named Karen Annette Campbell as · a co-conspirator, but Campbell pleaded guilty and was not tried with Johnson and Young. Bertha Nelson (Anderson) was named as a co-conspirator but not as a defendant; she testified at trial. After a jury trial, Johnson and Young were found guilty and sentenced to five years' imprisonment. We affirm the convictions.

JOHNSON

Johnson assigns two grounds for reversal. He argues, first, that the trial court erred in failing to direct a judgment of acquittal in his favor at the end of the Government's case; and, second, that the verdict of the jury finding him guilty was not supported by the evidence. This Court must determine whether "taking the view most favorable

to the Government, a reasonably minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt". United States v. Hill, 5 Cir. 1971, 442 F.2d 259. Or, as we stated in United States v. Reid, 5 Cir. 1971, 441 F.2d 1089,

> It is not our function to weigh the evidence. The jury is charged with determining the facts on the basis of the evidence in the case. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1944, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704. In a criminal case, this must be evidence which a reasonably minded jury could find adequate to support the defendant's guilt beyond a reasonable doubt. See Henderson v. United States, 5 Cir. 1970, 425 F.2d 134; Nagell v. United States, 5 Cir. 1968, 392 F.2d 934. Credibility choices are for the jury, not a reviewing court.

We mention only a few of the crucial pieces of evidence upon which the jury might have based its verdict. Bertha Nelson testified that she, Johnson, Young, and Campbell had travelled from Little Rock, Arkansas, to Jackson, Mississippi, on September 1, 1970, for the purpose of cashing money orders. Some 236 blank Travelers Express money orders had been stolen in Little Rock only a short time before, on August 26, 1970; similar blank money orders had been stolen on August 16 or August 17, 1970, from a store in Pine Bluff, Arkansas. Nelson testified that Johnson furnished her with money orders to cash and that she gave the money she received from cashing the money orders to Johnson. Finally, a Mr. Story of the Rufus Loan Company testified that a man using the assumed name of Nick Vaughan, Jr. cashed one of the stolen money orders at Rufus Loan on September 2, 1970. Story specifically identified Johnson as the man who had cashed the order under the name of Nick Vaughan, Jr. This evidence was plainly sufficient to support the jury's verdict and to support the denial of the defendant's motion for acquittal.

## YOUNG

Young sets forth four grounds for reversal. First, Young argues that because the written "advice of rights" form was read to Young at 3:19 p. m. and signed by an FBI agent at 3:21, the short span of time (two minutes) for informing Young of his rights orally was inadequate to insure that he comprehended those rights. The two minute span was surely one factor which the trial court might consider in assessing whether Young knowingly and intelligently waived his rights, but we cannot say that the time for explanation is entitled to conclusive weight. Agent Stringer testified that "I read the rights form to him to make sure that he did understand them and he said that he didn't want to sign the form but he did not have any objection to being interviewed." Stringer further recalled in his testimony that he had advised Young of his rights when Young was first taken into custody:

> Q. And are those the same rights that you advised him of at the automobile that you have previously testified to?
>
> A. Yes sir only they were in writing as well as words at that time.

The Government established the validity of the warnings given Young to the satisfaction of the trial court and we are unwilling to say that that court erred in so concluding. See United States v. Montos, 5 Cir. 1970, 421 F.2d 215, 222:

> . . . At trial the prosecution must show that the defendant was given the *Miranda* warnings before custodial interrogation began, that he had the opportunity to exercise the rights to which he was so advised throughout the interrogation, and that he knowingly, intelligently waived

these rights and agreed to answer questions or make a statement; otherwise, use against him of evidence obtained as a result of "custodial" interrogation is error.

■ Second, Young concedes that he was given proper *Miranda* warnings when taken into custody by the state police and again when the FBI took him into custody. He argues, however, that his Fifth Amendment rights were violated when a statement was taken from him during interrogation after he had refused to sign a written waiver of his right to remain silent. When all the circumstances indicate that the defendant knew of his right to remain silent and intelligently waived that right, the refusal to sign a written waiver does not render a confession inadmissible. Hodge v. United States, 5 Cir. 1968, 392 F.2d 552; United States v. Hopkins, 5 Cir. 1970, 433 F.2d 1041, 1044; United States v. Thompson, 4 Cir. 1969, 417 F.2d 196, 197. Special Agent Stringer testified that twice he advised Young of his constitutional rights: once upon Young's being taken into custody and again in the FBI office in Jackson, when he refused to sign a form indicating that he had been advised of his rights. Stringer further testified that Young said "that he didn't want to sign the form but he did not have any objection to being interviewed." Stringer's testimony was uncontroverted as to these points. His testimony provided the trial court with an ample basis from which it could conclude that, despite Young's failure to sign the written notice of his rights, Young knowingly and voluntarily chose to talk with the FBI and, ultimately, to confess.

■ Young next contends that the FBI postponed bringing him before a United States Commissioner for seven hours, with the intention of eliciting a confession. To support his contention, Young points to his own testimony that the FBI agents stated during the interrogation that if Young did not tell them what they wanted to know, he would not see the Commissioner that day to make bond and would be there all night. But, again, Young ignores the testimony of agent Stringer, who stated that he was present when the FBI interviewed Young, that no inducement or threat regarding making bond was offered during that time, and that Young was brought before the United States Commissioner when the Commissioner first became available at six p. m., approximately five hours after Young was taken into custody and only three hours after he was taken to FBI headquarters in Jackson, Mississippi. The district court accepted Stringer's account of the events of that afternoon, including his denial that any "promises" had been offered to Young and his statement that Young had been taken before the Commissioner at 6 o'clock, not seven or eight as Young had testified. Because it is undisputed that the interrogation of Young began shortly after his arrival at the FBI office, and because there is ample support in the record for the trial judge's finding that Young was taken before the Commissioner as soon as he was available, on the basis of Stringer's testimony, we find no error in the trial court's ruling that Young's statement was not the result of any coercion or pressure through intentional delay in taking him before a Magistrate.[1] Nor is the admissibility of Young's confession precluded

---

1. This conflict in the testimony of agent and defendant falls within the ambit of our holding in United States v. Ogle, 5 Cir. 1969, 418 F.2d 238. There, "[i]n a hearing before the Court in chambers Ogle emphatically denied that the agent gave him full and complete *Miranda* warnings. The agent, subjected to careful questioning by the Court, testified to the con- trary. The Court then found that the warnings were, in fact, given." We concluded that because we could not say that the finding was clearly erroneous, "appellate intervention on this score is not justified". 418 F.2d at 239. Accord, United States v. Kargoe, 4 Cir. 1968, 391 F.2d 284.

by 18 U.S.C. § 3501;[2] indeed, even on the hypothesis that Young was not brought before the Commissioner until seven or eight p. m., the delay would only be one factor to be considered in assessing whether the confession had been given involuntarily. United States v. Hathorn, 5 Cir. 1971, 451 F.2d 1337 [1971]. As we said once before when we approved a lower court's finding that there had been no intentional delay in taking an arrestee before a Magistrate,

> In contrast to the Mallory situation, appellant was not subjected to intensive and exhausting interrogation with a view toward making him refute an earlier denial of guilt . . . *Mallory* was decided before Miranda v. Arizona, 1966, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. *Mallory* was intended to insure that a suspect not be held for long hours of interrogation during which he had only his own personal stamina with which to resist an overbearing police barrage, and that if he were so intimidated the evidence thus gleaned could not be used at trial. With *Miranda,* however, came the decree that all persons taken into custody must be immediately warned of certain constitutional rights. Appellant was given these warnings. He knew he was entitled to counsel and that he need not speak to the officers at all. Knowing this, he chose to speak. How, then, can *Mallory* aid him? His detention be-

fore seeing the Commissioner, though delayed, caused him no harm. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. O'Neal v. United States, 5 Cir. 1969, 411 F.2d 131, 136.

▮ Finally, Young contends that it was reversible error for the trial court to inform the jury that a guilty plea had been entered by one of the co-conspirators, Karen Annette Campbell, who was not on trial with Young and Johnson. The exact quotation from the record was as follows:

> Now, the law presumes each one of these defendants to be innocent; the indictment is against three people; Karen Annette Campbell has pled guilty to the charge. She is not involved in this proceeding in any way. The Government has to prove a conspiracy between two or more people.

Young argues that the court failed to give the proper cautionary instruction that the plea of one co-conspirator is not to be taken as evidence of the guilt of another. As counsel argues, this omission had the effect of "reducing the burden of the Government to prove the existence of a conspiracy and leading the jury to the strong inference that if one of the alleged co-conspirators was guilty, then certainly the others must be also".

But the cautionary instruction was unnecessary in the context of the state-

---

**2.** § 3501(c) provides:

> In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made vol-

> untarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be travelled to the nearest available such magistrate or other officer.

**316**

ment alleged to be objectionable.[3] The trial court referred to the guilty plea of Campbell immediately after he informed the jury that "the law presumes each one of these defendants to be innocent" and went on to tell the jury that Campbell was not "involved in this proceeding in any way". The trial court then reiterated the instruction that each defendant must be taken to begin the trial "with a clean slate without any evidence against them". Because of the context in which the contested remark was made, the remark did not affect the substantial rights of the defendants Young and Johnson. See Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, 268. The court was attempting to satisfy the predictable confusion and curiosity of the jury when confronted with the fact that Campbell was indicted as the others had been but was not on trial with Young and Johnson. See United States v. Jones, 9 Cir. 1970, 425 F.2d 1048, 1054. Though an explicit cautionary instruction would have been preferable, on the specific facts of this case and in the clear context of the court's instruction on the presumption of innocence a cautionary instruction was not necessary.

The judgment of the district court as to both appellants is affirmed.

---

3. Immediately before giving its instruction on the presumption of innocence, which instruction contained the contested reference to Campbell's guilty plea, the court had instructed the jury on the significance of the indictment:

"Now this indictment which you will have with you in the jury room accuses James Earl Young, Sr., Samuel Lee Johnson, and Karen Annette Campbell in violation of these two statutes. Now you will have this indictment with you and as I've already explained to you this is merely an accusation it's not evidence of anything and they are accused thusly . . ."

Having mentioned Campbell's indictment, it was natural for the court to avert to Campbell's absence when it moved to instruct the jury on the presumption of innocence:

Now the law presumes each one of these defendants to be innocent, the indict-

ment is against three people, Karen Annette Campbell has pled guilty to the charge. She is not involved in this proceeding in any way. The government has got to prove a conspiracy between two or more people. Now the law presumes these defendants, James Earl Young, Sr., and Samuel Lee Johnson to be innocent of this crime of which they are charged, thus a defendant, although accused, begins a trial with a clean slate without any evidence against them. The law permits nothing but legal evidence presented before the jury in support of any charge against these accused. So the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt from all of the evidence in the case . . .