The **UNITED STATES**

v.

**Joseph Paul POTTER.**

**Crim. A. No. 73–150.**

United States District Court,
E. D. Louisiana.

June 25, 1973.

William F. Bailey, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Philip L. Kitchen, Kitchen & Montagnet, New Orleans, La., for defendant.

ORDER

JACK M. GORDON, District Judge:

The defendant, Joseph Paul Potter, is charged in a one count indictment for violation of the National Motor Vehicle Theft Act (commonly known as the Dyer Act), 18 U.S.C. § 2312. In a motion to suppress, Potter challenges the ability of the prosecution to admit during his trial any oral statement, confession or admission given by him to an agent of the Federal Bureau of Investigation during a custodial interview at Orleans Parish Prison. Potter asserts first, that said FBI agent did not inform him of his constitutional rights as enumerated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Secondly, the defendant Potter

contends that he requested the presence of an attorney before the interview commenced, but that the FBI agent, contrary to the *Miranda* decision, denied this request.

An evidentiary hearing was convened to allow the parties to present evidence and oral argument relative to the merits of the motion to suppress. At the suppression proceeding, the Court had the benefit of hearing testimony from the two principal protagonists, the defendant, Potter, and the FBI agent, John Smith, who conducted the interview in question. Based on the facts and the law more fully outlined below, the Court feels that the custodial statements of Potter were given to the FBI agent in accordance with the *Miranda* standards, and, therefore, such statements are admissible.

On May 5, 1972, at approximately 10:00 o'clock A.M., FBI agent Smith interviewed the defendant Potter in the record office of Orleans Parish Prison concerning the theft and interstate transportation of an automobile. Potter previously had been confined to Orleans Parish Prison for a state criminal conviction, and, at the time of the challenged interrogation, this period of incarceration was still in effect. After identifying himself to Potter, Agent Smith related to Potter the reason for the interview. Prior to any questioning, Agent Smith orally informed the defendant of his constitutional rights pursuant to the *Miranda* decision, and, subsequent to this oral notice, Agent Smith handed to Potter the customary Warning and Waiver of Rights form,[1] which contains a printed statement of the *Miranda* rights. According to Agent Smith's testimony, Potter read the form in toto at this juncture but he refused to sign the waiver form in the absence of legal counsel. The defendant did agree, however, to be interviewed by the FBI agent, a fact recorded in an addendum at the bottom of the form. Lloyd McKay, an employee of Orleans Parish Prison, who was working in the record office at the time of the interview, witnessed the waiver form immediately after the defendant read it.

During the verbal explanation to Potter of his constitutional rights, Agent Smith modified the normal *Miranda* warnings due to the then existing circumstances. Inasmuch as Potter was not in federal custody at the time of the interview, Agent Smith explained to the defendant that he (Smith) was not in a position to appoint an attorney before custodial questioning, qualifying this remark by indicating to Mr. Potter that a United States Magistrate would appoint an attorney for him (Potter) if he so desired.

1. INTERROGATION; ADVICE OF YOUR RIGHTS

Place _____
Date _____
Time _____

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _____
Witness: _____
Witness: _____
Time: _____

The thrust of the defendant's motion to suppress is that the agent's verbal modification of part of the *Miranda* warnings tainted the entire interview and any fruits thereof to the point of inadmissibility. The Court cannot and does not accept such a limited reading of the *Miranda* decision as the mover suggests.

In making certain findings of fact, the Court, at the outset, must make a credibility choice between Potter and Smith because of the patent contradictions when their statements are compared. After observing the demeanor of these two individuals during their testimony at the suppression proceeding, the Court has no difficulty in selecting Agent Smith's version of events as the more credulous one. Particularly, as the Court commented after hearing all of the testimony, the unusually long pauses between questions propounded to Mr. Potter and his respective responses, while not reflected in the record, suggested to the Court a self-serving attempt to fabricate rather than a troubled effort to recall the necessary facts. The Court believes that the full *Miranda* rights were presented and explained to Potter preceding the interview in question.

Furthermore, the Court finds that at no time, prior to or during the interview, did Potter request the presence of counsel. Although Potter stated to Agent Smith that he would not sign the waiver form sans legal counsel, Potter never asked to consult with an attorney before speaking. Potter's failure to make a request for legal assistance must be viewed in light of the fact that he twice had been informed of such a constitutional right moments before the interrogation commenced but he chose not to exercise this right.

■ While this Court adheres to the explicit standards enunciated by the Supreme Court in Miranda v. Arizona, *supra,* in deciding the legality vel non of a custodial interrogation, the Court must examine the totality of circumstances to determine if the government has proven admissibility by a preponderance of the evidence. *See,* United States v. Watson, 469 F.2d 362 (5th Cir. 1972). The Court has not replaced the *Miranda* criteria with the totality of circumstances test, but, instead, it uses the latter as a supplemental analytical implement to review the adequacy of the warnings given to the defendant with respect to the government's burden pursuant to *Miranda.* *Cf.* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In surveying the facts, it is clear from Potter's own admissions while on the witness stand that he is no neophyte in criminal law and criminal procedure. Rather, he is quite familiar with the import of the *Miranda* warnings, and he possessed such legal familiarity at the time of questioning. Potter, well versed in the panoply of his constitutional protections, must have understood that he could have remained silent; that anything he said to the FBI agent could be used against him in a court of law; and that if he wanted to answer questions without an attorney present, then he had the right to stop answering questions at any time. *Cf.* United States v. Priest, 409 F.2d 491 (5th Cir. 1969).

The Court believes that the factual situation in this case, especially the background data regarding knowledge and comprehension of the *Miranda* rights, distinguishes the case at bar from United States v. Priest, *supra.* In *Priest,* the incriminating statements were elicited by an FBI agent during custodial interrogation at a hospital while the defendant was recovering from injuries. Moreover, Priest testified that he did not understand certain fundamental constitutional rights at the time of the questioning. Contrariwise, Potter's lack of physical infirmities was complemented by a rather comprehensive understanding of his *Miranda* rights at the time Agent Smith began his interrogation session. At no time during the questioning was there any intimation that Potter wished the interview to

cease. Hence, the Court feels that the government has sustained its weighty burden of proving a knowing, intelligent, and voluntary waiver by Potter of his constitutional privileges in this instance. *See*, Randall v. United States, 454 F.2d 1132 (5th Cir. 1972). The government has established that Potter's custodial statements were the product of a free and informed choice and are therefore admissible.

■ Quaere: whether or not the FBI agent's modification of the *Miranda* warnings constituted irreparable and fatal damage to any admissions or confessions made by the defendant. The Fifth Circuit, in a per curiam opinion, recently affirmed usage of a slight modification of the *Miranda* warnings prior to questioning—a situation similar to the case sub judice. In United States v. Lacy, 446 F.2d 511, 512 (5th Cir. 1971), the Court approved the following warning:

Before we ask you any questions, you must understand your rights; you have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during the questioning. You have this right to the advice and presence of a lawyer, even if you cannot afford to hire one. *We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer. (emphasis added)

The court in *Lacy* recognized that the defendant was informed that he had the right to the presence of a court appointed attorney prior to questioning, and, additionally, that he had the right not to answer any questions until an attorney was appointed for him. *See*, Lathers v. United States, 396 F.2d 524 (5th Cir. 1968); *see also*, Massimo v. United States, 463 F.2d 1171 (2nd Cir. 1972).

An earlier decision by the Fifth Circuit, Mayzak v. United States, 402 F.2d 152 (5th Cir. 1968) likewise indicated juridical approbation to reasonable modification of the *Miranda* mandates. In this case the defendant, who alleged noncompliance with the requisite warnings, was informed of his constitutional rights several times, both orally and in writing. However, the FBI agent informed Mayzak that the FBI could not furnish a lawyer until federal charges were filed against him. Moreover, the defendant Mayzak knew that he could remain silent or that he could stop the questioning at any time. The Court in *Mayzak* concluded that the *Miranda* holding is not a requisite for the interrogating officer conducting the interview to declare his personal and immediate power to summon an attorney. Since the defendant Mayzak knew about his right to counsel and the concomitant right to have court appointed counsel if indigent, and since Mayzak knew about his right to have such counsel present during any questioning in addition to being aware of his other constitutional safeguards, the Fifth Circuit reasoned that Mayzak's election to speak without the advice of counsel did not constitute substantive error.

"[T]he words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient." United States v. Vanterpool, 394 F.2d 697 (2nd Cir. 1968). Agent Smith's verbal modification of the *Miranda* warnings did not deceive the defendant nor did it fail to fully apprise the defendant of his rights, including, inter alia, the right to have counsel present during questioning, and the right, if indigent, to appointed counsel during interrogation. *Cf*. United States v. Carneglia, 468 F.2d 1084 (2nd Cir. 1972). Agent Smith's oral version of the warnings merely constituted a personal prag-

matic assessment of how the *Miranda* rights are executed; such a technical deviation from the standard warnings would not and did not prevent the defendant from receiving a complete and understandable explanation of his rights.

The defendant's second allegation rests in the denial of counsel after a specific request for an attorney. As previously mentioned, the Court, in making a credibility selection, does not believe any request for counsel was presented to the FBI agent. Agent Smith testified that the defendant did refuse to sign the waiver form without an attorney. However, at no point in time did the defendant request consultation with an attorney according to Agent Smith's testimony.

After twenty-one years of service in the FBI, Agent Smith is well aware of the unfavorable ramifications that may result when the *Miranda* requirements are disregarded, and this awareness serves as a constant reminder to Agent Smith, as well as to every law enforcement officer, to honor *Miranda's* constitutional dictates. To reiterate, the Court concludes that Agent Smith's version of the facts is the true version, that is, the defendant Potter never asked his interviewer for an attorney.

█ Exhibit G–1 filed in the record during the hearing on the motion to suppress is the waiver of rights form (duplicated in footnote 1) presented to Potter before Agent Smith posed any questions. Potter refused to sign the waiver form in the absence of legal counsel. Neither the defendant nor the government raised the legal issue as to whether or not the defendant's refusal to sign this waiver form constituted, either explicitly or implicitly, a request pursuant to the *Miranda* ruling, for counsel prior to interrogation. Should such a refusal to sign be equated with a refusal to discuss, then the Court must decide if the interrogation should have ended at this point or until counsel could be present. Due to the importance of the preceding legal question, the Court on its own initiative must explore at length this issue.

After carefully surveying the testimony, the Court, guided by the Supreme Court's pronouncement in *Miranda*, finds that the defendant Potter did not indicate in any manner at any stage of the questioning process that he wished to consult with an attorney before speaking. Miranda v. Arizona, 384 U.S. at 444–445, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

In conjunction with the above finding of fact, the Court recognizes the line of jurisprudence in this Circuit that has interpreted, perhaps unduly extended, this passage in *Miranda* to mean that refusal to sign the waiver form connotes a request to consult with counsel before speaking during custodial interrogation. This Court rejects such an interpretation. It is incumbent on this Court, therefore, to detail the facts and rationale of earlier Fifth Circuit cases in order to present its position in a cogent fashion.

Chronologically first, as well as being the foundation by which to construct an analysis of custodial interrogation, is the case of United States v. Hopkins, 433 F.2d 1041 (5th Cir. 1970). After conviction by a jury for violation of the Dyer Act, 18 U.S.C. § 2312, Hopkins contended that his incriminating statements should have been inadmissible based on an inadequate waiver of his Fifth Amendment right not to incriminate himself. Hopkins argued that subsequent to his refusal to sign a waiver of rights form, the FBI agent should have terminated at once the interrogation, and that failure to do so made any statement by Hopkins inadmissible. The court determined from the facts that after Hopkins refused to sign the waiver the FBI agent attempted to end the interrogation, but Hopkins, blurting out exculpatory remarks, rekindled the conversation. The ensuing questions posed by the FBI agent, stated the court, pursued the line of inquiry initiated by the defendant Hopkins. Of par-

ticular import to this Court and to the Fifth Circuit as quoted in the *Hopkins* opinion is the following language from a Fourth Circuit case, United States v. Thompson, 417 F.2d 196, 197 (1969), cert. denied, 396 U.S. 1047, 90 S.Ct. 699, 24 L.Ed.2d 692 (1970):

> Thompson complains that an oral confession given to agents of the F.B.I. was admitted even though he had refused to sign a written waiver of his rights. The evidence discloses that Thompson, an intelligent man, was informed of his rights in the manner required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *He declined to sign a written waiver, but he stated that he understood his rights. Thereafter he freely and voluntarily answered questions.* He was not subjected to prolonged interrogation or in any way coerced. In view of Thompson's intelligence, his affirmative statement that he understood the explanation of his rights, and the voluntariness of his confession, we hold that his refusal to sign a written waiver did not render the confession inadmissible. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968). (Emphasis added)

The interpretative hiatus between the *Thompson* and *Hopkins* decisions readily is apparent; in *Thompson* there is not the slightest allusion as to which party, federal agent or defendant, initiated the conversation, whereas in *Hopkins*, the court made this issue the crux of its holding. It is difficult to discern why the court in *Hopkins* cited the *Thompson* language as "particularly relevant," yet in the same judicial breath, relied on the narrow inquiry, unmentioned in *Thompson*, concerning the instigation of interrogation. Practically speaking, the *Hopkins* holding has transformed the *Miranda* standards into a game of legal maneuvering—dare the interviewer initiate the conversation subsequent to the defendant's refusal to sign the waiver

form, all statements or confessions are inadmissible, but, should the defendant begin the conversation, then the interviewer can proceed in procuring an admissible conversation. By these rules, the significant criterion in interrogation today becomes the ascertainment of whom speaks second!

Successive Fifth Circuit opinions issued shortly after United States v. Hopkins reinforced this "who spoke first" test. In United States v. Phelps, 443 F.2d 246 (5th Cir. 1971), the court held that the defendant's refusal to sign the waiver form, albeit said defendant understood his rights and declined the aid of counsel, indicated the defendant's unwillingness to waive his right to remain silent. Hence, the court in *Phelps* stated that the interrogation should have ended at this point. The Fifth Circuit, however, preserved the *Hopkins* distinction: to wit, if the defendant voluntarily initiates a conversation with his interrogator, then subsequent questions and answers are admissible. *Accord,* United States v. Ryan, 478 F.2d 1008 (5th Cir. 1973); United States v. Ramos, 448 F.2d 398 (5th Cir. 1971). It is significant to observe that in its citation of the *Hopkins* case the Court in *Phelps* included the pertinent passage from the *Thompson* decision. United States v. Phelps, 443 F.2d at 249.

A counter line of Fifth Circuit jurisprudence must be examined concurrently with the *Hopkins-Phelps-Ramos* trilogy to fully develop this compendium on custodial interrogation. United States v. Johnson, 455 F.2d 311 (5th Cir. 1972), a case whose factual situation is virtually on all fours with the present case, is representative of the Court of Appeals' alternative approach regarding admissibility of certain in-custody statements. In *Johnson,* one of the defendants argued that his rights under the Fifth Amendment were violated when a confession was obtained from him during interrogation after he had refused to sign the waiver of rights form. The interrogating agent testified that the defendant stated "that he didn't want to

sign the form but he did not have any objection to being interviewed." . These facts closely parallel those of the instant case; Potter, as Agent Smith penned on the bottom of the waiver of rights form, refused to sign the form but displayed a willingness to be interviewed. Of particular importance in the analysis of this latter line of jurisprudence, as exemplified in *Johnson,* is the *Johnson* court's reference to and approval of the above quoted Fourth Circuit's *Thompson* decision. *See,* United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972). *Cf.,* United States v. Devall, 462 F.2d 137 (5th Cir. 1972).

Like most laymen, Potter probably was leery about affixing his signature to any written document without the advice of an attorney. But the defendant, as reflected in the agent's above mentioned addendum on the waiver form, expressed no reservations whatsoever concerning discussion of the case with the FBI agent in want of an attorney. Similar to the testimony of the defendant in *Johnson,* the testimony of Potter provided the Court with adequate information from which it could conclude that the defendant knowingly and voluntarily chose to converse with the FBI agent, despite the defendant's failure to sign the written notice of his rights. The Court also acknowledges the fact that signature of the waiver of rights form is not imperative, and looking at all the circumstances ,of this contested interview, the Court finds that Potter, though refusing to sign the waiver, did wish to discuss the case with Agent Smith. *See, e. g.,* United States v. McDaniel, 463 F.2d 129 (5th Cir. 1972); United States v. Devall, 462 F.2d 137 (5th Cir. 1972); United States v. Van Dusen, 431 F.2d 1278 (1st Cir. 1970). *See also,* Fritts v. United States, 395 F.2d 219 (5th Cir. 1968).

This Court chooses to follow the reasoning in *Johnson* and its progeny, and, therefore, the Court is convinced, upon an examination of the circumstances in the present case under light of the *Miranda* doctrine, that the defendant Potter's failure to sign the waiver form does not per se negate the highly convincing proof that his oral waiver of his rights was given knowingly and intelligently, and, furthermore, that Potter's statements to Agent Smith were conveyed voluntarily. Refusal to sign the waiver form merely constitutes one of the sundry factors which this Court must consider in determining whether the government has sustained its burden of proof as to the admissibility of Potter's custodial statements. In summary, a defendant's refusal to sign the waiver of rights form should not and will not be equated with his refusal to discuss the case.

Accordingly, it is ordered that the defendant, Joseph Paul Potter's motion to suppress any statements, admissions or confessions is hereby denied.