**James Benjamin TILSON**

v.

**James ROSE, Warden, and the
State of Tennessee.**

**Civ. No. 3–74–223.**

United States District Court,
E. D. Tennessee, N. D.

Sept. 10, 1974.

Robert M. Stivers, Jr., Knoxville, Tenn., for petitioner.

W. Henry Haile, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Petitioner, a state prisoner, has filed an application for habeas corpus relief. The complaint was filed without prepayment of fees or costs on July 29, 1974.

The Attorney General of the State of Tennessee has responded to the complaint by way of an Answer filed August 9, 1974, and a Supplemental Answer filed August 30, 1974.

The petitioner is represented by retained counsel in this action. Petitioner, through his counsel, alleges violations of his Fifth, Sixth and Fourteenth Amendment rights.

Petitioner was convicted of second degree murder in Knox County by a jury after being indicted for first degree murder. He was sentenced to a term of ten to twenty years. The Court of Criminal Appeals, on direct appeal, reduced the judgment to voluntary manslaughter and the Department of Corrections released him on the new expiration date of March 9, 1973. The Tennessee Supreme Court granted certiorari to the State and the Court reversed and reinstated the sentence of 10–20 years on the conviction of second degree murder. State v. Tilson, 503 S.W.2d 921 (Tenn. 1974). Petitioner was arrested on April 24, 1974 and his new expiration date is December 24, 1983.

The primary contention in the application for relief is that the confession of petitioner admitted in the Trial Court was obtained from him in violation of his right to remain silent and right to counsel (violating his Fifth, Sixth and Fourteenth Amendment rights).

Petitioner supports this contention by stating that he refused to sign a waiver of rights form during custodial interrogation. The policemen noted on the bottom of the form as follows: "James B. Tilson said he understood his rights but did not want to sign a statement—did not want to sign." Nevertheless, the interrogation immediately thereafter continued and petitioner ultimately signed an incriminating statement.

In his application for habeas corpus, petitioner characterized the effect of the written statement as follows:

"At the time of trial, a statement, in written form and executed by the

defendant, was admitted into evidence before the jury during the State's Proof in Chief. That statement, Exhibit No. 2 at the original trial, stated the factual background leading up to the incident in question, and then stated that the defendant did shoot the deceased, that he had gone to secure a weapon for the purpose of shooting another, but that he intended to shoot and kill the deceased. The statement itself was very damaging to the original defendant, now plaintiff, and was the only proof during the State's Proof in Chief that the Petitioner, James Benjamin Tilson, actually fired the shot that killed the deceased, and the only implication of any premeditation on his part. No other evidence was offered by the State to show that the defendant, now the petitioner, did in fact shoot the deceased, or that there was any intention of the commission of a homicide by said act." Application for Habeas Corpus, at p. 4.

The facts which led to the homicide are basically as follows. The incident took place on April 7, 1971, during the hours of 4 P.M. and 8 P.M., both inside and outside of the Cue Lounge in Knoxville. The Cue Lounge is a poolroom and a bar. The evidence indicated that petitioner and deceased had been drinking heavily. Deceased had severely beaten another man in the bar before petitioner arrived and petitioner testified that he became aware of the trouble when he heard it discussed after he arrived. Around 8 P.M. petitioner's brother got into a fight and petitioner was struck several hard blows in the stomach by one Doug Ellison and petitioner left the bar after Ellison secured a pool cue. Ellison was known to be armed with a pistol. Petitioner secured a pistol from this own car and returned to the front of the lounge where he shot the deceased, Joe King, who later died of his wounds. On the witness stand, petitioner said he obtained the pistol to do something about Doug Ellison and Big

Ronnie Soloman, but neither of these persons were in the front of the poolroom when the shooting occurred. The jury rejected petitioner's assertions of self-defense in that deceased allegedly had made a movement toward his pocket as for a weapon. After petitioner shot deceased, he opened the door of the lounge and fired a shot into the interior.

Petitioner has exhausted his remedies with respect to the admissibility of his confession in that the matter was briefed and argued before the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court.

The Court of Criminal Appeals in ruling on the admissibility of the confession, which was introduced during the state's proof in chief, stated the following:

" . . . A written statement was taken from Tilson without an express waiver of his *Miranda* rights. The question thereby presented was resolved in this case when Tilson took the stand, testified to substantially the same facts and flatly denied making some of the statements. One may be cross-examined upon a voluntary confession where clearly obtained contrary to *Miranda*. Harris v. New York, 401 U.S. 595, 91 S.Ct. 668, 28 L.Ed.2d 130. Both the State and the defendant introduced eye-witness evidence that Tilson did the shooting. Hence, it cannot be successfully argued that the admission forced Tilson to take the stand. The State had its case without it. And once Tilson took the stand, the statement was clearly admissible. Further, his testimony would be admissible upon any re-trial. So, without reaching the question of *Miranda* rights waiver, we overrule the assignment."

*Harris* involved use of a confession obtained in violation of *Miranda* to impeach a defendant once he has taken the stand in his own defense. *Harris* did not involve the introduction of such a confession during the state's proof in chief and then justifying it by defend-

ant's subsequent testimony concerning that confession.

"*Miranda* barred the prosecution from making its case with statements of an accused while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards." *Harris*, 401 U.S. at 224, 91 S.Ct. at 645.

However, the Court does not need to reach the question of whether or not the Tennessee Courts have misapplied *Harris* in violation of petitioner's Constitutional rights since it concludes on other grounds that that admission of the confession during the State's proof in chief was not Constitutional error.

■ The Court of Appeals recently stated the law in this Circuit pertaining to a defendant's refusal to sign a waiver form:

" '[W]hen all the circumstances indicate that the defendant knew of his right to remain silent and intelligently waived that right, the refusal to sign a written waiver does not render a confession inadmissible.' United States v. Johnson, 455 F.2d 311, 314 (5th Cir. 1972)." United States v. Vaughn, 496 F.2d 622 (6th Cir. 1974)

■ A motion to suppress the petitioner's confession was made at trial and a hearing was held thereon. The petitioner did not testify at that hearing nor did he contradict police testimony that his confession was made after a lawful and effective warning as required under *Miranda*. During the hearing on the motion to suppress, one of the interrogating detectives was questioned by the prosecutor concerning petitioner's confession given after he had been advised of his full *Miranda* rights but had refused to sign a waiver form:

"Q All right. And was there any resistance on his part to tell you what happened?

"A No, sir, he was very cooperative and friendly.

"Q Did he ever at any time indicate that he did not want to be asked any questions or that he did not want to answer any questions?

"A No, he didn't appear that way.

"Q Did he ever at any time indicate that he desired an attorney?

"A No, he didn't.

"Q Would you characterize his attitude as cooperative?

"A Yes, he was very cooperative." Bill of Exceptions, p. 22.

On cross-examination, defense counsel asked the detective if the interrogation had continued even after petitioner refused to sign a waiver form. The response was as follows: "He said he wanted to give us a statement. We asked him if he would, and he said yeah. He did it willingly." Bill of Exceptions, p. 24. The detective further testified that petitioner did not ask the interrogating officers to cease further questioning. Bill of Exceptions, p. 25. Also on the statement petitioner signed there was a recitation of his constitutional rights and there was testimony that he read and understood those rights before signing it. Bill of Exceptions, p. 20.

Petitioner makes no assertions in the present action that his confession was coerced other than to say that the interrogators did not stop the questioning when petitioner would not sign the waiver of rights form. There are no allegations that the confession was untrue or otherwise represented untrustworthy evidence when introduced at trial. See Michigan v. Tucker, 417 U.S. 433, 94 S. Ct. 2357, 41 L.Ed.2d 182 (1974).

For the reasons stated, it is apparent from the record that petitioner was afforded a full and fair hearing on the admissibility of his confession, and no evidentiary hearing is required. Title 28 U.S.C. § 2254(d). Petitioner was fully aware of his rights and chose to make a voluntary confession.

■ Furthermore, if this Court had concluded that the confession was im-

properly introduced into evidence, the error would have to be considered harmless beyond a reasonable doubt. An eye-witness testified that petitioner was some six feet from deceased when the shot was fired and petitioner had a gun in his hand. Bill of Exceptions, pp. 57, 58. Another witness who was at the scene of the homicide testified that immediately after he heard the shot fired, he looked and saw petitioner with a pistol in his hand. Bill of Exceptions, p. 102. Petitioner admitted shooting deceased in his own testimony in an effort to establish that he had acted in self-defense. Bill of Exceptions, pp. 123–24. Thus, it appears that the perpetrator of the homocide was never really in question. Therefore, the Court concludes that even had the confession been inadmissible, its introduction was harmless error beyond a reasonable doubt in light of the strong corroborative evidence of petitioner's guilt. See Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

Accordingly, it is ordered that the application for habeas corpus relief be, and the same hereby is, dismissed.