CIACCIO, Judge.
Defendant, Herman Evans, Jr., was charged by grand jury indictment with second degree murder, a violation of R.S. 14:30.1. A twelve member jury found him guilty as charged. The trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals.
On July 24, 1987 at about 6:30 a.m., the police discovered the body of Gary Anear on the corner of Tricou Street and Florida Avenue in the Ninth Ward. Anear had bled to death from numerous stab wounds to his neck made with a sharp object.
*373 Detective Steve Nicholas was in charge of the investigation of the crime. On July 25, 1987 he received an anonymous phone call that two sisters, Gina and Lisa Burke, were possible witnesses to the murder. He received another anonymous tip regarding the license plate of a car that had presumably been involved in the murder. He located the owner of the car, Brenda Gilchrist. Gilchrist told Detective Nicholas that she had recently sold the car to the defendant. The police then interviewed the two Burke sisters. Based on their testimony, the police issued a warrant for defendant’s arrest and a search warrant for his car.
Gina and Lisa Burke testified at trial. Gina testified that on July 23, 1987 she had helped her sister Lisa move to a new residence located at 2507 Deslonde Street. David Green, Lisa’s boyfriend, and the defendant, a friend of Green’s whom the sisters had just met, helped them move. They used the defendant’s car to carry things to the new house.
At about 9:30 p.m., Anear, Gina’s former boyfriend, came by Lisa’s new house to see Gina. They had broken up because Anear had beat her. Lisa, Gina, the defendant and Green were in the living room playing cards. Anear started saying abusive things to Gina. He threatened to return later that night if she would not talk to him. Anear left while the Burke sisters, Green and the defendant continued to play cards. At 4:00 a.m. Anear returned. An-ear told Gina: “Bitch, you’re going to talk to me this time.” The defendant told An-ear to leave Gina alone. Anear hit the defendant and a fight ensued. The defendant knocked Anear out. He and Green then dragged Anear out of the house, put him in the back seat of the defendant’s car and drove off.
About fifteen minutes later the defendant and Green returned. The defendant was not wearing a shirt. The defendant told Gina that she did not have to worry about Anear anymore. Neither the defendant nor Green told her what they had done to Anear, nor did she ask. Gina did not discover that Anear had been killed until she heard it on the news the next day. Lisa Burke’s testimony corroborated Gina’s testimony.
When the police searched the defendant’s car, they found a knife and the defendant’s shirt therein. They found no fingerprints or blood stains.
When the defendant was arrested he gave a statement to the police which was introduced at trial. He said that, on the night of the murder, he was home with his wife; that he had lent his car the preceding day to a man named Wayne; that Wayne had called him on July 24, and told him that his car had broken down on Lizardi Street. He said that he did not know Wayne’s last name or where he lived. He denied knowing the Burke sisters or having any knowledge of the crime.
The defendant did not testify at trial. The defense instead tried to impeach the credibility of the Burke sisters. When the police had initially taken their statements neither had mentioned that David Green was present on the night of the murder. It was not until the District Attorney’s office some time later asked them if Green was present that they admitted that he was and so testified at trial. David Green continued to live with Lisa Burke for several months after the shooting. Green had apparently disappeared by the time of defendant’s trial and neither sister allegedly knew his whereabouts. The defense implied that Green, not the defendant, was the one who stabbed Anear to death.

Errors Patent

A review of the record for errors patent reveals none.

Assignment of Error

As his sole assignment of error, the defendant contends that the trial court erred in allowing into evidence the statement made by him during custodial interrogation at police headquarters after his arrest.
The testimony in the record indicates that the defendant was arrested on August 10, 1987 at his home by Officers Nicholas, Reynolds and Cheramie. He was advised of his Miranda rights as soon as he was placed in the police vehicle. He was then *374 taken to the police station. Upon arrival, Officer Nicholas, accompanied by Officer Reynolds, read the defendant his Miranda rights again from a “Rights of Arrestee” form. The defendant allegedly indicated that he understood his Miranda rights and wished to cooperate fully with the police but stated that he would not sign the waiver of rights provision on the “Rights of Arrestee” form, without first talking to an attorney. Officer Reynolds checked the box “PREFERS TO SPEAK WITH AN ATTORNEY BEFORE MAKING A DECISION.” The form provides in part:
The possibility of your participation in other crimes is also under investigation. According to provisions in the Constitution of the United States and of the State of Louisiana it is my duty to inform you that:
I. You need not make any statements; that is, you have a right to remain silent;
II. Anything you say may be used against you in trial;
III. You have a right to consult with and obtain the advice of an attorney, before answering any questions;
IV. If you cannot afford an attorney, the court will obtain an attorney to represent you and advise you;
V. You have a right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statement.
DO YOU UNDERSTAND WHAT I HAVE JUST READ TO YOU?
Yes X No._.
Note: If the person does not fully understand and intelligently and voluntarily waive the right of counsel, he cannot be questioned. If the person at any time during the questioning asks not to be questioned further or indicates in any manner that he does not wish to be questioned, then the questioning must cease. I understand what has been read to me and with full knowledge of my rights I wish to waive all privileges against self incrimination and make a statement about my knowledge of the commission of this crime.
[[Image here]]
Signature of Arrestee or Suspect I have read and explained the RIGHTS OF AN ARRESTEE OR SUSPECT to the person named above, and he.
[ ] SIGNED, WAIVING HIS RIGHTS
[ ] REFUSED TO SIGN
[ ] WAS UNDECIDED, CONSEQUENTLY WAS ADVISED NOT TO SIGN
[ ] DID NOT UNDERSTAND, AND DID NOT SIGN
[X] PREFERS TO SPEAK WITH ATTORNEY BEFORE MAKING DECISION
[ ] OTHER — (EXPLAIN IN REMARKS)
CONCLUDED: DAY MON. DATE 8-10-87 TIME 2:18 a.m.
COPY GIVEN TO PERSON BY
/s/ JOHN REYNOLDS
Signature of Officer
BADGE 1766 ASSIGNMENT Homicide & CIB
PRINT NAMES OF OFFICERS and/or WITNESSES TO ABOVE
Det. Steve Nicholas, Homicide, CIB
REMARKS_
Then, based upon the defendant’s indication that he wished to cooperate, but would not sign the form, the police took defendant’s oral statement without requiring that the defendant sign the form.
The defense moved to suppress the statement, but the motion was denied. Officer Nicholas then testified at trial as to the contents of the statement based on the written notes he had taken while the defendant made the oral statement.
At the motion to suppress hearing and at trial, Officer Nicholas was the only witness to testify regarding the circumstances surrounding the taking of defendant’s statement. Defendant did not testify.
At the motion to suppress hearing Officer Nicholas testified:
Q. Subsequent to your reading those rights, did he acknowledge that he understood those rights?
A. Yes, he did.
Q. Did he sign the form?
*375 A. No, he did not.
Q. When he refused or when he didn’t sign the form, what block did you mark off with regard to the Rights of Arrestee Form?
A. First, to speak with an attorney before making a decision.
Q. Would you please tell the Court what Mr. Evans told you regarding his checking off that block?
A. Mr. Evans indicated he understood his constitutional rights. He chose to cooperate fully with the investigation but preferred not to sign the form without the advice of counsel.
Q. And with regard to him, the statement that you just made, that he wanted to cooperate, could you explain that to the Court?
A. He would be willing to waive his right and remain silent and answer questions that were posed to him. He indicated during the preliminary phase I was asking him about his — if he wanted to waive his rights he indicated that he had nothing to do with the murder and wanted to answer the questions, but he would not sign the form.
He further testified:
Q. Now, you should (sic) he initially refused to sign the signature of the Arres-tee form; is that correct?
A. Well, he just refused to sign it, not initially, he refused to sign the form.
Q. And you also checked off that he prefers to speak with an attorney before making a decision; is that right?
A. Yes.
Q. And that decision is to whether or not he wanted to make a statement; is that right?
A. No, ma’am.
Q. That’s not?
A. No.
Q. What is that then, if he checked off prefers to speak with attorney before making a decision?
A. Regarding signing the form.
Q. Oh, that wasn’t in regards to actually speaking with you?
A. Yes, ma’am.
Q. Now, when he told you that, he didn’t want to sign the form, did you reread his rights to him?
A. I’m sorry.
Q. When he told you he didn’t want to sign the Arrestee Form, did you reiterate his rights to him?
A. No, ma’am.
Q. So you only gave him his rights once?
A. His rights were given to him that there was a discussion when it came time to sign the form he would not have been asked to sign the form if he chose not to waive his constitutional rights. So for that reason I asked him to sign the form. He did not want to sign the form specifically and requested that he would have to speak with an attorney before signing the form, but he did wish to cooperate. That was his inclination the whole time. I would not have even asked him to sign this form if he chose not to waive his constitutional rights.
Q. Now, you asked him to sign this form after he told you what happened? A. No, ma’am, he was asked to sign the form as soon as I asked him if he understood what I had just read to him and he indicated he wanted to cooperate fully. Because I read the paragraph to him right under that caption, the paragraph identifying his options to waive his constitutional rights.
Q. But he did say that he wanted to cooperate fully?
A. Yes, ma’am.
Q. But he did not want to sign the form?
A. Yes, ma’am.
Officer Nicholas reiterated his testimony at trial. He testified:
Q. Alright, did he appear to understand those rights that you gave him?
A. Yes, sir.
Q. Tell the ladies and gentlemen of the jury what happened after that?
A. The specific questions asked by me regarding if he understood his rights, he indicated he did understand his rights but he wasn’t going, to sign the form without the advice of an attorney. He *376 then was asked again what exactly he meant and he said he would talk about whatever we wanted to talk about, he would cooperate because he had nothing to do with it, but he wasn’t going to sign the form. At that point we understood his inclination to be that he was to cooperate but he didn’t want to go through the physical process of signing a form.
He further testified:
Q. And in that statement he asked you —I’m sorry, you asked him, did he want a lawyer; is that correct?
A. I asked him that as part of his constitutional rights, yes.
Q. And he told you at that time he wanted a lawyer; is that right?
A. No, ma’am, not at all. Not at all.
Q. You didn’t say that Herman Evans, when you asked him if he wanted a lawyer, said, Yes he would like to consult a lawyer before signing the statement? Did you testify to that?
A. No, ma’am.
Q. What did you testify to?
A. I testified that Herman Evans, before he would sign a statement, he needed to consult with an attorney. Before he would sign the “Rights of Arrestee” form.
Q. He told you he wanted to consult with an attorney; is that right?
A. Before he would sign that form he would consult with an attorney.
Q. Okay, and at that time you didn’t allow him to go get a lawyer; is that right?
A. He didn’t ask for a lawyer.
Q. Well you just indicated that he told you that he wanted to consult with a lawyer.
A. Well, I would have gotten him a lawyer if I was going to make him sign the form but I didn’t need him to sign the form, therefore he readily cooperated with the investigation. It was his request not to sign this specific form.
Q. So even though he indicated to you about a lawyer, that he wanted to consult with a lawyer before he signed this form, you still asked him questions; is that right?
A. Surely.
The defense contends that the defendant invoked his general constitutional right to counsel during questioning as evidenced by the information checked in the box on the “Rights of Arrestee” form, and that, once the defendant invoked his general right to counsel, the officers were required to stop questioning him until an attorney was made available to him. Because the officers did not cease questioning and because the defendant did not subsequently waive his right to counsel by initiating communication with the officers, the defense contends that the statement made by defendant, after he had invoked his general right to counsel, was secured in violation of the defendant’s constitutional rights and was thus inadmissible under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), reh. den., 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981).
The issue before us is whether the defendant’s refusal to sign the waiver of rights provision on the “Rights of Arrestee” form unless an attorney was present, constituted a general request for counsel so as to preclude the police from questioning the defendant once this request was made under Edwards.
To protect a defendant’s constitutional rights, statements made by a defendant during custodial interrogation must be suppressed unless the defendant has, before making the statements, been advised of his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Under Edwards v. Arizona, supra, once the accused has invoked his general right to counsel during custodial interrogation, the interrogation must stop. If the police continue to question the defendant, any responses he makes may not be admitted. The right to counsel, once invoked, is not deemed waived unless the defendant himself initiates further discussions with the police. See, Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
In Edwards, Edwards was arrested and taken to jail. He was informed of his *377 Miranda rights, stated that he understood these rights and would submit to questioning. During questioning he was told that another suspect in the crime had already implicated him. Edwards first denied any involvement in the crime and gave a taped statement presenting an alibi defense. He then sought to “make a deal” with the interrogating officer. The officer said that he did not have the authority to make a deal, but gave the defendant the telephone number of the district attorney’s office. The defendant called, but no one answered. The defendant then told the officer “I want an attorney before making a deal.” Questioning then ceased for the day.
The following day, two other detectives went to see the defendant. The defendant told the guard that he did not want to talk to anyone. The guard told him that he had to talk to the detectives. The detectives informed the defendant of his Miranda rights. The defendant then agreed to talk to them on the condition that his statement would not be recorded. The detectives took his statement.
The trial court denied a motion to suppress the statement which was based on the argument that the defendant’s Miranda rights had been violated when the officers returned to question the defendant after he had invoked his right to counsel. The trial court found that the defendant’s statement was voluntary.
The Arizona Supreme Court held that the defendant had invoked his right to counsel when he said that he wanted an attorney before he made a deal, but that he waived that right the next day when he agreed to talk to the detectives.
The United States Supreme Court reversed the Arizona Supreme Court finding that the trial court had erred in admitting defendant’s statement into evidence because it had been made in violation of the defendant’ Miranda rights. The Court held that the defendant had invoked his general right to counsel in stating that he wanted an attorney before making a deal; that once he had done so the police were obligated to cease questioning; and that defendant, in talking to the officers the next day, had not waived his right to counsel previously invoked.
It further held that, once the defendant has invoked his right to counsel, waiver may not be shown by the fact that the defendant responded to further police-initiated custodial interrogation, even if he has been advised of his rights. Instead the police are obligated to stop questioning until counsel has been made available to the defendant, unless the defendant himself initiated further communications with the police.
In the recent case of Minnick v. Mississippi, — U.S. —, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) the U.S. Supreme Court expanded the Edwards rule — that once an accused requests counsel, officials may not reinitiate questioning until counsel has been made available to him — and held that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with an attorney. The Court held that the requirement that counsel be “made available” to the accused refers not to the opportunity to consult with an attorney outside the interrogation room, but to the right to have the attorney present during custodial interrogation.
The defendant in Minnick had been arrested on a Mississippi warrant for capital murder. An interrogation by federal law enforcement officials ended when he requested a lawyer, and he subsequently communicated with appointed counsel two or three times. Interrogation was reinitiat-ed by a county deputy sheriff after Minnick was told that he could not refuse to talk to him, and Minnick confessed. The court found that Minnick’s confession should have been suppressed as Minnick’s interrogation was initiated by the police in a formal interview which he was compelled to attend, after he had previously made a specific request for counsel, and therefore it was inadmissible.
The state contends that defendant’s refusal to sign the waiver form without first consulting with an attorney was not a general request for counsel under Edwards. *378 In support of its contention, the state cites the case of United States v. Potter, 360 F.Supp. 68 (E.D.La.1973), affirmed, 490 F.2d 991 (5th Cir.1974).
In Potter, the defendant was charged with a violation of the National Motor Vehicle Theft Act. An FBI agent went to interview Potter at Orleans Parish Prison concerning the theft and interstate transportation of an automobile. At the time, Potter was incarcerated for a prior state criminal conviction. After identifying himself to Potter, Agent Smith related to Potter the reason for the interview. Prior to any questioning, Agent Smith orally informed Potter of his constitutional rights pursuant to the Miranda decision, and subsequent to this oral notice, Agent Smith handed to Potter the Warning and Waiver of Rights form, which contained a printed statement of the Miranda rights. Potter read the form but refused to sign it in the absence of legal counsel. Potter did agree, however, to be interviewed by the FBI agent.
In a motion to suppress, Potter challenged the ability of the government to admit during his trial any oral statement, confession or admission given by him to the FBI during the custodial interview at Orleans Parish Prison.
After conducting an evidentiary hearing relative to the merits of Potter’s motion to suppress, the trial judge found that the full Miranda rights were presented and explained to Potter preceding the interview. The trial judge also found that at no time prior to the interview did Potter request the presence of counsel before speaking even though he had stated to Agent Smith that he would not sign the waiver form absent legal counsel. The trial judge concluded Potter’s failure to make a request for legal assistance must be viewed in light of the fact that he had twice been informed of such a constitutional right before the interrogation commenced but he chose not to exercise the right.
In denying Potter’s motion to suppress, the trial judge stated:
While this Court adheres to the explicit standards enunciated by the Supreme Court in Miranda v. Arizona, supra, in deciding the legality vel non of a custodial interrogation, the Court must examine the totality of circumstances to determine if the government has proven admissibility by a preponderance of the evidence. See, United States v. Watson, 469 F.2d 362 (5th Cir.1972). The Court has not replaced the Miranda criteria with the totality of circumstances test, but, instead, it uses the latter as a supplemental analytical implement to review the adequacy of the warnings given to the defendant with respect to the government’s burden pursuant to Miranda. Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
360 F.Supp. at 70.
The Court in Potter addressed the issue of whether or not the defendant’s refusal to sign a waiver form constituted, either explicitly or implicitly, a request pursuant to the Miranda ruling, for counsel prior to interrogation. The Court cited a line of jurisprudence including United States v. Johnson, 455 F.2d 311 (5th Cir.1972), United States v. Thompson, 417 F.2d 196 (4th Cir.1969), cert. denied, 396 U.S. 1047, 90 S.Ct. 699, 24 L.Ed.2d 692 (1970), United States v. McDaniel, 463 F.2d 129 (5th Cir.1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973), and United States v. Devall, 462 F.2d 137 (5th Cir.1972), in holding that a defendant’s refusal to sign the waiver form merely constitutes one of the sundry factors that the Court must consider in determining whether the government has sustained its burden of proof as to the admissibility of the defendant’s custodial statements. The Court found that “[l]ike most laymen, Potter probably was leery about affixing his signature to any written document without the advice of an attorney.” Id at 74. The Court also acknowledged the fact that signature of the waiver of rights form is not imperative and that the Court must look to all surrounding circumstances of the interview. The Court specifically stated that “a defendant’s refusal to sign the waiver of rights form should not and will not be *379 equated with his refusal to discuss the case.” Id.
In the instant case, the state offered the testimony of Detective Nicholas at the motion to suppress hearing to prove that the defendant knowingly and voluntarily waived his right to remain silent and his right to counsel. The aforementioned excerpt from Nicholas’ testimony indicates that the officers read the defendant his Miranda warnings at the time of his arrest and again at police headquarters. The police utilized the “Rights of Arrestee” form to further explain to the defendant his rights. The testimony indicates that the defendant understood his rights. The “Rights of Arrestee” form also indicates that defendant understood his rights as evidenced by the “X” marked in the blank by “Yes” after the question “DO YOU UNDERSTAND WHAT I HAVE JUST READ TO YOU?” Further, Nicholas’ testimony explicitly indicates that the defendant’s request for legal counsel was qualified — he would not sign the waiver form without first talking to an attorney. In explaining why an “X” was placed in the space before the comment “PREFERS TO SPEAK WITH ATTORNEY BEFORE MAKING DECISION”, Nicholas emphasized that it referred to defendant’s refusal to sign the form without first speaking to an attorney and not a refusal to speak to them without first consulting with an attorney.
The defense offered no testimony from the defendant or any other evidence to controvert Detective Nicholas’ testimony on these points. Further, there is no evidence in the record that the defendant was questioned for an unreasonable period of time or was threatened or coerced in any manner. Unlike Edwards and Minnick, there is nothing in the record to indicate that the defendant had requested counsel specifically for the purpose of police interrogation or that he had requested such during the course of questioning and the officers failed to cease the interrogation. Under these circumstances, the defendant’s failure to sign the waiver form merely presented another factor for the trial court to evaluate in examining the totality of the circumstances surrounding the making of the statement, bearing exclusively on the issue of voluntariness of the statement.
Detective Nicholas’ testimony provided the trial court with an ample basis from which to conclude that the defendant willingly and voluntarily answered questions which were posed to him only after having been twice informed of his rights and after having stated his willingness to speak to and cooperate with the officers. The determination of the credibility of testimony is a matter for the finder of fact, whose determinations are not to be disturbed unless clearly erroneous. The trial court’s determination that the defendant’s statement was free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence. Accordingly, we find no error in the trial court’s admission into evidence the defendant’s statement and its denial of defendant’s motion to suppress the statement.
AFFIRMED.