**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James W. DEVALL, Defendant-Appellant.**

**No. 71-1252**

**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.

June 9, 1972.

---

\* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

William L. Crull, New Orleans, La. (court appointed), for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Stephen L. Dunne, New Orleans, La., Mary Williams Cazalas, Michael H. Ellis, Asst. U. S. Attys., New Orleans, La., for the United States.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This direct appeal was taken from Appellant's conviction under 18 U.S.C.A. § 641[1] for having been in possession of

1. 18 U.S.C.A. § 641 provides:
   "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value

two United States Post Office money orders, with the knowledge that they were stolen and with the intention of converting them to his own use and gain.[2] Appellant, in assigning numerous points of error,[3] contends that the Trial Court erred (i) by admitting into evidence certain testimony concerning statements he made while in the custody of postal authorities and (ii) by imposing a sentence of two years imprisonment since the question of the value of the money orders he had in his possession—a question which under § 641 had no bearing on the issue of his guilt or innocence but was of prime importance on the issue of his punishment—was not submitted to the jury. We affirm.

### The Crime

In New Orleans, Louisiana on the night of February 19, 1970, Appellant attempted to cash two bogus United States postal money orders, both of which had been stolen from the Albion, Oklahoma Post Office on September 29, 1968. The money orders were blank when stolen but when presented for cashing by the Appellant, each was made out in the amount of $100 and each was made payable to a Mr. James McDonald.[4] Appellant was not charged with forging or passing forged Government instruments nor was there any evidence that linked him to the theft of the money orders from the Oklahoma post office. Rather, he was charged under § 641 for having been in possession of stolen United States Government property. Appellant's defense during trial consisted primarily of an attempt to refute that portion of the Government's evidence concerning his knowledge that the money orders had been stolen. He repeatedly contended that he had come into possession of the money orders in a crap game and could not therefore have had the requisite knowledge that they had been stolen. The jury, having been properly instructed on the requisite elements of the offense, obviously disbelieved this story and returned a verdict of guilty. The Trial Court, without having submitted the issue of the value

of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

2. Appellant was charged under § 641 by information in a single count for possession of two $100 postal money orders.

3. Appellant also asserts that the Trial Court erred (i) by admitting into evidence the contents of Appellant's wallet, (ii) by giving certain instructions to the jury and (iii) by admitting into evidence a large amount of hearsay testimony. After careful consideration, we have found these points of error to be without merit and not worthy of discussion.

4. Appellant was successful in cashing one money order at the Golden Slipper Bar. His second unsuccessful attempt at the DeVille Motel, where he had registered for the night under the name of James McDonald, prompted the motel night clerk to make inquiries of postal authorities which ultimately resulted in Appellant's arrest. In both attempts, Appellant presented a Louisiana driver's license which identified him to be James McDonald. He also presented this driver's license to postal inspectors when asked for identification although he had in his possession at least one driver's license which demonstrated his true identity.

The Louisiana's driver's license which identified Appellant as James McDonald was not, however, introduced into evidence during trial. Postal inspectors explained that it had been discovered missing after Appellant had been escorted to the men's room during the initial questioning session on the morning of the arrest.

of the money orders to the jury, sentenced Appellant to a term of two years imprisonment. This appeal followed.

### Custodial Interrogation

Although Appellant did not raise any objection at trial to the introduction of evidence concerning statements he made to Postal Inspectors after his arrest, he here contends that the Trial Court erred by admitting this testimony into evidence. He first argues that he did not intelligently and knowingly waive his right to remain silent or have counsel present during questioning and second, that the two hour delay between his arrest and appearance before a committing magistrate violated Rule 5(a), F.R. Crim.P.[5] and renders the evidence inadmissible.

■ We need not tarry over Appellant's argument that this minor delay in his arraignment before a magistrate tainted the statements which were introduced during trial. This delay, whether viewed in the light of 18 U.S.C.A. §

3501(c)[6] *or* the totality of the circumstances surrounding the delay [7] Lovelace v. United States, 5 Cir., 1966, 357 F.2d 306, can in no way provide a basis for a holding of inadmissibility.

■ We likewise reject Appellant's argument that he did not intelligently and knowingly waive his right to remain silent. His first contention, that he could not have given an intelligent and knowing waiver because he was intoxicated and had not slept the previous night—raised for the first time on appeal—finds no support in the record. Neither the Appellant during the course of his testimony, nor his counsel, in the form of an objection to the introduction of this evidence, raised this issue at trial. Nor is there any other evidence in the record which indicates that the Appellant did not have a "rational awareness" of surrounding circumstances when he made the statements. United States v. Kershner, 5 Cir., 1970, 432 F.2d 1066, 1069–1070.

5. F.R.Crim.P. 5(a) provides:
   "Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

6. 18 U.S.C.A. § 3501(c) provides:
   "In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge

to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer."

7. Appellant was kept in custody for two hours before being taken before a magistrate so postal authorities could conduct further investigation and verify one of his accounts of the circumstances which resulted in his possession of the money orders. This short delay for this stated reason was not unreasonable. See United States v. Vita, 2 Cir., 1961, 294 F.2d 524, cert. denied, 1962, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788; United States v. Thompson, 2 Cir., 1965, 356 F.2d 216, cert. denied, 1966, 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675.

In this regard, Appellant also argues that under Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Phelps, 5 Cir., 1971, 443 F.2d 246; and United States v. Ramos, 5 Cir., 1971, 448 F.2d 398, his failure to sign a printed waiver of rights form when tendered to him by postal authorities [8] after having been twice informed of his rights, and after having immediately beforehand expressly stated that he did desire to speak with the officers, should have triggered the automatic cessation of interrogation.[9] Appellant contends that the statements made subsequent to this failure to sign the form should have, therefore, been excluded from evidence. We find it unnecessary to pass upon the merits of the Government's strenuously pressed argument that this or any other objection to the admission of the evidence was waived by Appellant's failure to raise timely objection during trial since we have concluded under the facts here presented, that the Trial Court did not err in admitting these statements into evidence.

"A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody. A detainee may still wish to discuss the matter with his detainers for any number of reasons, including a desire to exculpate or explain himself. Put another way, a detainee may make statements that are quite voluntary without signing a written waiver. A court must look to all the circumstances of the detention to ascertain whether or not the refusal to sign a waiver was tantamount to a refusal to discuss." United States v. McDaniel, 5 Cir., 1972, 463 F.2d 129, 135.

Viewing the circumstances surrounding Appellant's affirmative oral waiver, we are convinced that his failure to sign the waiver form when tendered to him does not in itself negate the overwhelming proof that his oral waiver was intelligently and knowingly given and that his statements were voluntarily given. Nor do we view his failure to sign the form as an "indication" that he desired to remain silent. Appellant was first asked to read the printed form and asked if he understood the meaning of the statements contained therein. He answered that he did. Officers then orally informed him of his rights by reading the printed form aloud to him. Most important, he was then asked if he wanted to talk with the questioning officers. He answered that he did. He was not questioned for an unreasonable period of time nor was he threatened or coerced in any manner. He willingly and voluntarily answered questions which were posed to him only after having been twice informed of his rights and after having affirmatively stated that he desired to speak with the officers. Under these circumstances, the failure to sign the waiver form merely presented another factor for the Trial Court to evaluate in examining the totality of the circumstances surrounding the making of the statements, bearing exclusively on the issue of the voluntariness

---

8. The Appellant did not expressly refuse to sign the waiver form. Instead, when he was given the form by questioning officers he wrote at the bottom "If I don't sign this I will not be kicked in the head." He then asked the questioning officer to place his signature below the statement. The officer complied and then proceeded with the interrogation. Appellant at no time made any statement which was inconsistent with his earlier expression of desire to speak with the officers.

9. It is of course well settled under *Miranda* that if a defendant, after having been given the necessary warnings, "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723. Appellant, relying upon *Phelps*, *supra*, and *Ramos*, *supra*, argues that his failure to sign the waiver form when tendered constituted a *Miranda*—indication that he desired to remain silent.

of the statements.[10] We find no error in the Trial Court's admission of the testimony concerning the statements into evidence.

## The Punishment

Under 18 U.S.C.A. § 641 (see note 1, *supra*) the value of the subject stolen Government property involved is determinative on the issue of punishment in that upon this issue hangs the question of whether or not the offense is a felony or a misdemeanor.[11] Although Appellant neither requested the submission of the value issue to the jury, nor raised any objection to the Court's charge be-

low as required by Rule 30, F.R.Crim. P.,[12] he here contends that the Trial Court erred by sentencing him to a term of two years imprisonment—a sentence which could only be imposed if the money orders had an aggregate value in excess of $100—without first having submitted the issue of value to the jury.

■ Appellant's argument at least begins upon sound ground since it is now well recognized that the question of value in a § 641 proceeding is within the province of the jury rather than that of the sentencing Judge. United States v. Kramer, 2 Cir., 1961, 289 F.2d 909.[13]

10. Although Appellant did not object to the admission of this testimony during trial, and although the Trial Court was not, therefore, required to hold a voluntariness hearing, see Randall v. United States, 5 Cir., 1972, 454 F.2d 1132; Evans v. United States, 5 Cir., 1967, 377 F.2d 535; Sellers v. Smith, 5 Cir., 1969, 412 F.2d 1002, the Court did conduct such a hearing during which the facts surrounding the statements were fully and completely developed in response to the Government's questioning of the interrogating officers. The only question asked by defense counsel was whether or not Appellant had been given his *Miranda* warnings. When specifically asked whether or not there were any objections to the admission of the testimony into evidence, defense counsel answered that there were none.

11. 18 U.S.C.A. § 641 provides that if the stolen Government property involved has a value in excess of $100, the offense is a felony, maximum punishment being 10 years imprisonment and a $10,000 fine. If the value of the property does not exceed $100, however, the offense is a misdemeanor, maximum punishment being one year in jail and a $1,000 fine.

12. Rule 30, F.R.Crim.P. provides:
"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after

the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

13. The *Kramer* Court stated:
"Although, in contrast to 18 U.S.C. §§ 2314 and 2315, the section of the Criminal Code here in question does not make value in excess of a certain figure an element of the crime but rather a fact going only to the degree of punishment, we assume the Sixth Amendment entitles a defendant to have that fact determined by the jury rather than by the sentencing judge. There is, of course, a certain incongruity in asking a jury to exercise such expertise in the ways of the underworld as to determine the "value" of money orders that can be or have been forged; but the omniscience of the jury extends to harder questions than that. The judge should instruct the jury to find whether Kramer is guilty of the offense charged and, if so, whether at any time when Kramer received or was concealing or retaining the stolen property with intent to convert it to his own use and knowing it to have been stolen, the property as a whole, in the condition in which it had been placed, had a value of $100."
289 F.2d at 921.

Indeed, this Court in Jalbert v. United States, 5 Cir., 1967, 375 F.2d 125, cert. denied, 1967, 389 U.S. 899, 88 S.Ct. 225, 19 L.Ed.2d 221, has approved the dual issue submission procedure whereby the jury in a § 641 proceeding is called upon to determine not only the guilt or innocence of the accused, but also whether or not the subject property has a value in excess of $100.[14]

■■■ But the sound ground soon shifts. For there was no objection to the charge or request that the value issue be submitted to the jury. To succeed Appellant must make it out to be plain error. That makes it quite a different thing from the contention that the failure of the Court to submit it constituted an impermissible ·directed verdict.[15] It is equally fundamental that when the requirements of Rule 30 have been disregarded we are, under Rule 52(a), F.R.Crim.P., forced to disregard any error or defect which does not substantially prejudice the rights of the defendant. Cleaver v. United States, 10 Cir., 1957, 238 F.2d 766, 770. Although some cases hold that the failure to instruct on every element of the crime is per se plain substantial error under Rule 52, see Morris v. United States, 9 Cir., 1946, 156 F.2d 525, we are convinced that under the facts of this case, the mechanical application of this rule is unwarranted. See Olar v. United States, 9 Cir., 1968, 391 F.2d 773.

■■■ No matter what error or defect is involved, the true Rule 52 inquiry is directed toward the question of whether or not that error or defect resulted in any harm to the defendant. In determining whether or not such harm has resulted, we may, of course, examine the record in its entirety. Johnson v. United States, 1943, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704, 714 (concurring opinion); Bearden v. United States, 5 Cir., 1968, 403 F.2d 782, cert. denied, 1969, 393 U.S. 1111, 89 S. Ct. 920, 21 L.Ed.2d 808. In this case, the record discloses not only that the value of the money orders was undisputed, but also that the Appellant in his own testimony clearly and unequivocally established the aggregate value of the money orders to be in excess of $100.[16] See Montgomery v. United States, 8 Cir., 1968, 403 F.2d 605, cert. denied, 1969, 396 U.S. 859, 90 S.Ct. 126, 24 L. Ed.2d 110. The Court's failure to submit this issue to the jury, within the narrow factual confines of this particular case, did not, therefore, constitute *plain* error under the Rule.

Affirmed.

---

14. "We approve the method used in submitting the issue of value to the jury. The forms of verdict * * * called for a finding * * * on whether the value of the property involved was more or less than $100. * * * When these forms of verdict are considered in the light of the Court's charge, the value issue was fairly and properly submitted to the jury." *Jalbert, supra,* 375 F.2d at 126.

15. Roe v. United States, 5 Cir., 1961, 287 F.2d 435, cert. denied, 1961, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29; Strauss v. United States, 5 Cir., 1967, 376 F.2d 416; Mims v. United States, 5 Cir., 1967, 375 F.2d 135.

16. The question of the particular "value" to be determined in a § 641 proceeding has received considerable attention. See *Kramer, supra,* 289 F.2d at 920; *Jalbert, supra,* 375 F.2d at 126; United States v. Ciongoli, 3 Cir., 1966, 358 F.2d 439. Although it is clear that when the value in legitimate business channels is not fixed or is speculative, the price obtainable in the "thieves market" can be looked to, *Ciongoli, supra; Kramer, supra,* such determination was unnecessary in this case. Appellant freely admitted cashing one of the money orders he was charged with having in his possession for the full face amount of $100. This admission establishes beyond any possible doubt that that specific money order had a value on the legitimate market of $100. As the other money order had *some* value —no matter how nominal—the aggregate value of the two money orders clearly exceeded $100.