302 So.2d 273 (1974)
STATE of Louisiana
v.
Frank NAVARRE.
No. 54983.
Supreme Court of Louisiana.
October 28, 1974.
Eddie N. Pullaro, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant was convicted after a trial by jury of simple burglary, a violation of La.R.S. 14:62, and was sentenced to serve nine years at hard labor in the Louisiana State Penitentiary at Angola, Louisiana. On this appeal defendant relies upon *274 five bills of exceptions for a reversal of his conviction and sentence.[1]
During the pre-dawn hours of May 6, 1972, the defendant was apprehended while trying to break into the Family Drug Store in Houma, Terrebonne Parish, Louisiana. After arrest for the attempted burglary of this store, a search of the defendant revealed in his possession two one-dollar bills, approximately two dollars in change and three packs of Winston cigarettes. Approximately two hours after defendant's arrest it was discovered that the Lafayette Drug Store in Houma had been burglarized. The owner of the Lafayette Drug Store determined that about two dollars in change and several packages of Winston cigarettes had been taken. Later in the morning two Houma police officers removed defendant from the jail, transported him to Police Headquarters and, after giving him his Miranda warnings, questioned him about the Lafayette Drug Store burglary. The officers testified that the defendant admitted participation in the Lafayette Drug Store burglary, stating that he had stolen some change and a few packages of cigarettes. In due course defendant was tried for the burglary of the Lafayette Drug Store and his conviction followed.
These bills of exceptions were reserved to the trial court's denial of defendant's motions to discharge appointed counsel and have other counsel assigned to represent him. Defendant argues that he had a right to counsel of his own choice, even though he was indigent and unable to pay for retained counsel.

BILLS OF EXCEPTIONS NOS. 1 and 3
The motions to dismiss appointed counsel were submitted at a pre-trial hearing two weeks before the commencement of trial and again on the day of trial. At the pre-trial hearing the defendant alleged that defense counsel's representation in another matter was inadequate and requested that the court discharge the attorney and appoint another. No reason for the motion was given on the day of trial. We note that the defendant did not claim that his counsel was inadequate at the time of his appeal in the prior case (State v. Navarre, 289 So.2d 101 (La.1974)). A reading of the record in this case fails to disclose that counsel's representation of the defendant amounted to ineffective assistance of counsel.
In the past this Court has upheld the refusal of trial courts to dismiss court-appointed counsel and assign other counsel when no good cause is shown and the indigent defendant simply expresses his disinclination to accept appointed counsel's services. See State v. White, 256 La. 36, 235 So.2d 84 (1970) and State v. Lewis, 255 La. 623, 232 So.2d 294 (1970). The fact that counsel had represented defendant in an earlier criminal proceeding which culminated in conviction is not an adequate reason for holding that the defendant was entitled to other appointed counsel. We hold that the trial court correctly denied defendant's motions seeking the discharge of his appointed attorney.

BILL OF EXCEPTIONS NO. 4
During the course of trial a witness for the State made a highly emotional and unresponsive outburst after the prosecutor posed a routine question to him. The jury was removed from the courtroom and the defendant moved for a mistrial, alleging that the witness' outcry prejudiced him in the eyes of the jury. The following excerpts from the record show the nature of the statement he made and the questions which preceded it:
"MR. ALCOCK:
Q Would you state your full name please.
A Walter Joseph Hebert.
*275 Q By whom are you employed?
A City Police, City of Houma.
Q And how long?
A Judge, they come and got me from a funeral. I was a pallbearer."
After the jury left the courtroom it was established that the witness was attending the funeral of his nephew when he was summoned to appear in court. Earlier on the morning of the trial the officer had attempted to notify the district attorney that his presence was required at the funeral that day but the district attorney was in conference with the trial judge and did not communicate with the officer. The officer left the courthouse to attend the funeral but was summoned back to court and delivered there to present his testimony. After determining that the witness was too distraught to testify and that his only relationship to the case was that he was the first officer to discover that the Lafayette Drug Store had been burglarized, the court excused the witness, recalled the jury and explained the officer's inability to testify. Prior to the jury's return to the courtroom the defendant moved for a mistrial, arguing that the officer's outburst had "impregnated the jurors minds."
The conduct of which the defendant complains is not grounds for a mistrial under La.C.Cr.P. Art. 770. Nor would the remark have warranted a jury admonition under La.C.Cr.P. Art. 771, since it is not of a nature that might create prejudice against the defendant, even though it was irrelevant and immaterial. The jury was given an adequate explanation of the officer's conduct by the court.
This bill of exceptions lacks merit.

BILLS OF EXCEPTIONS NOS. 5 and 6
These bills of exceptions were reserved when the trial court ruled admissible oral inculpatory statements made by the defendant a few hours after his arrest. The defendant argues that the trial court erred in ruling that the statements were freely and voluntarily given after the defendant had been apprised of his Miranda rights. It is argued that the defendant's refusal to sign a rights waiver form and the testimony of the two interrogating officers that defendant's rights were read from a card and not otherwise explained in detail establishes that the statements were not freely and voluntarily given.
In accordance with its affirmative duty to establish the free and voluntary nature of the defendant's statements, the State offered the testimony of the two interrogating officers as a predicate to the admission of the statements. The officers both testified that no force, threats or other coercion were used to obtain the statements and that defendant was read his Miranda rights and clearly indicated that he understood them. The officers' testimony reveals that the interrogation was not protracted. Defendant in no way rebutted the officers' testimony.
The lack of a signed, written waiver of rights form is not determinative of the issue of the voluntariness of a confession. State v. Neal, 275 So.2d 765 (La. 1973). We believe that a refusal to sign a rights waiver form "* * * may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody. * * *" United States v. Devall, 462 F.2d 137 (5th Cir. 1972). A careful review of the testimony of the officers offered on the predicate establishes that the State has met its burden under La.R.S. 15:451 to affirmatively establish that the confession was free and voluntary. We therefore hold that the trial court correctly ruled that the oral inculpatory statements were admissible.
We note that the defendant's sentence was illegally imposed without the requisite twenty-four hour delay between denial of defendant's motion for a new trial and the imposition of sentence. La. *276 C.Cr.P. Art. 873.[2] The sentence is vacated and the case remanded to the trial court with instructions that defendant be sentenced in accordance with the law. The conviction is affirmed.
NOTES
[1] The record reflects that seven bills of exceptions were perfected; however, only five bills are argued in brief. The remaining two bills are deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974).
[2] In addition, defendant was sentenced to the Louisiana State Penitentiary rather than being sentenced "at hard labor" as required by La.R.S. 14:62, and committed to the Louisiana Department of Corrections, as required by La.R.S. 15:824.