311 So.2d 881 (1975)
STATE of Louisiana
v.
Jessie Mae SINGLETON.
No. 55766.
Supreme Court of Louisiana.
April 24, 1975.
*883 James M. Dozier, Jr., Truett West, Farmerville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The defendant, Jessie Mae Singleton, after being tried and convicted of second degree murder, was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for a period of twenty years. On this appeal she relies upon eight assignments of errors for a reversal of her conviction and sentence.
The record discloses that defendant's husband, Desse I. Singleton, died of arsenic poisoning on September 25, 1973. Less than two weeks after his death, the defendant confessed to law enforcement officers that she had administered rat poisoning to him on the day of his death and then burned the container in which it was stored.

ASSIGNMENTS OF ERRORS NOS. 1, 5 and 6
These assignments of errors all pertain to a tape-recorded confession given by the defendant. Assignment of Errors No. 1 encompasses defendant's objection to the trial court's overruling of her motion to suppress the tape-recorded confession. The defendant based her motion on the State's failure to produce a Miranda[1] rights waiver which the State maintained she executed prior to giving her confession. In brief the defendant argues that her confession should have been suppressed in view of the State's inability to produce the written rights waiver and because of her own testimony that she was not advised of her Miranda rights.
At the hearing on the motion to suppress, the deputy sheriffs from Union and Morehouse Parishes who were present at the time that defendant confessed testified concerning the events which surrounded her confession. According to the Union Parish deputy, the defendant appeared at the Union Parish Jail on October 3, 1973, seeking permission to see an incarcerated friend. At that time the deputy informed the defendant that she was suspected of her husband's murder and asked her if she would be willing to travel to Bastrop, Louisiana with him in order to take a psychological stress evaluation test (a lie detector test). The deputy testified that defendant agreed to go to Bastrop and take the test and that he orally advised defendant of her Miranda rights before taking her to Bastrop.
Upon arriving in Bastrop, the defendant was again advised of her Miranda rights and complied with the deputies' request that she sign a printed rights waiver. The deputies testified that defendant acknowledged that she understood each of the rights of which she was informed and signed the waiver form. The Morehouse Parish deputy who administered the lie detector test then requested the defendant to sign a consent form authorizing the administration of the test. Defendant complied with this request after the test and the form were explained to her. After the administration of the test the defendant confessed that she poisoned her husband. A tape recording was made of the incidents related by the defendant; this confession is the subject of the defendant's motion to suppress. Both officers testified that no promises, threats or coercion were used in order to secure the confession and that defendant freely and voluntarily made the tape-recorded confession.
*884 At the hearing the defendant testified that she was not advised of her constitutional rights. However, she also testified that she did not remember going to Bastrop and could not recall being questioned or giving a statement. When closely cross-examined the defendant declined to deny that she had gone to Bastrop, been questioned and given a statement but only maintained that she did not remember these activities. There was no allegation that she had been threatened or mistreated or tricked into confessing.
After a complete review of the relevant portions of the record we determine that the trial court did not err in denying the motion to suppress the confession. It is clear that the State met its affirmative burden of establishing the free and voluntary nature of the defendant's confession. La.R.S. 15:451. Its failure to produce the signed waiver form does not render erroneous the trial court's ruling that the confession was free and voluntary. In fact, proof that a defendant refused to sign a rights waiver form does not in itself render a confession involuntary, since the refusal "`* * * may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody. * * * ` United States v. Devall, 462 F.2d 137 (5th Cir. 1972). * * *." See State v. Navarre, 302 So.2d 273 (La.1974). In light of the State's unrefuted evidence that the waiver form was signed and the confession given voluntarily, we find that defendant's complaints in this assignment of errors lack merit.
Assignment of Errors No. 5 relates to defendant's objection that the State had not established a chain of custody of the tape recording sufficient to warrant its admission into evidence. She therefore contends that the trial court erred in permitting its introduction into evidence.
The record reveals that the Morehouse Parish deputy who operated the recording device which preserved defendant's oral confession initially retained the cassette tape in his custody. During the time the tape was in his custody, this deputy gave it to his secretary for transcription. He then turned the cassette tape over to the Union Parish deputy in attendance at the time that defendant confessed. The Union Parish deputy retained the tape in his custody until its introduction at trial. The two deputies testified at trial but the secretary who had temporary physical custody of the tape while transcribing it was not called by the State as a witness. Defendant argues that this established a break in the chain of custody and that the tape therefore should not have been admitted into evidence.
The law does not require that the evidence relating to chain of custody eliminate every possibility that the object has been altered. See State v. Freeman, 306 So.2d 703 (La.1975). In the present case there was no allegation that the tape had been altered or spliced in any way; nor did the defendant contend that the voice on the tape recording was not hers. Since the recording was shown to be reasonably connected with the defendant and the crime for which she was on trial, the tape was properly introduced into evidence. See, e.g., State v. Gladden, 260 La. 735, 257 So.2d 388 (1972).
Assignment of Errors No. 6 deals with defendant's complaint that the taperecorded confession was played during trial in the jury's presence but was not played at the hearing on the motion to suppress. Defendant argues in brief that the taped confession should have been played at the hearing as well as at trial in order to adequately inform her of the nature of the proceedings against her.
As the trial court notes in its per curiam, the scope of the inquiry at the hearing on the motion to suppress was confined to whether the defendant had been advised of her Miranda rights prior to confessing and whether the confession was otherwise free and voluntary. The contents of the confession were not germane to the inquiry.
*885 The trial court also notes in its per curiam that the defendant did not request that the tape be produced and played at the hearing. The fact that the defendant filed a motion to suppress the taped confession reveals that she knew of its existence. Therefore, if she wished to know the contents of the confession she was entitled, upon request, to pretrial inspection of the taped confession. See State v. Bendo, 281 So.2d 106 (La.1973).
This assignment of errors lacks merit.

ASSIGNMENT OF ERRORS NO. 2
This assignment relates to the trial court's overruling of various defense motions to quash the jury venires on the grounds that women were systematically excluded therefrom. While the defendant acknowledges in brief that the United States Supreme Court's decision in Taylor v. Louisiana[2] was held to be prospective only in Daniel v. Louisiana,[3] she argues that the Daniel decision is not binding on the states. She further argues that her situation differs from that of Taylor and Daniel because she is a female and that her equal protection claims require determination.
Defendant's arguments are of no avail. In State v. Rester, 309 So.2d 321 (1975), this Court chose to apply Daniel as a matter of state law. Moreover, in State v. Lee, 311 So.2d 846 (1975), we held that the female defendant's equal protection claims contained in a bill of exceptions complaining of the denial of a motion to quash the indictment were without merit. Under our holdings in Rester and Lee we are constrained to hold that this assignment of errors lacks merit.[4]

ASSIGNMENT OF ERRORS NOS. 3 and 4
These assignments of errors pertain to the trial court's refusal to excuse for cause two prospective jurors whom the defendant wished excluded. When the trial court refused to excuse the two jurors for cause, the defendant used two of her peremptory challenges; all of the defendant's peremptory challenges were exhausted in selecting the jury.
As the defendant claims, the early portions of the voir dire examination of each of the prospective jurors reveal that they were uncertain about their ability to disregard the defendant's decision not to testify, if she made such a decision. Defendant maintains that the prospective jurors' initial answers revealed that they would harbor some prejudice against the defendant should she decline to take the stand and testify in her own defense.
A complete review of the voir dire examinations of these two jurors supports the trial court's per curiam observation. We therefore approve and adopt the per curiam which states, in part:
"The two prospective jurors, Hicks and Albritton, in the course of initial questioning on their voir dire, expressed the reaction of the average layman when asked how they would feel about the *886 failure of the defendant to take the stand and testify. They were being perfectly honest in stating that this would cause them to wonder about her reluctance to testify if she were innocent. However, upon being interrogated by this Court, they stated that they would follow the law and that the defendant's failure to take the stand would raise no presumption of her guilt in their minds."
We conclude that the trial court did not err in refusing to excuse these prospective jurors for cause and that these assignments of errors have no merit.

ASSIGNMENT OF ERRORS NO. 7
This assignment of errors relates to the trial court's action in sustaining the State's objection to questions seeking information from the son of the couple regarding the relations between the defendant and the deceased. The State argued that the defendant's inquiry sought to elicit evidence of the deceased's dangerous character, which evidence is inadmissible in the absence of evidence of a hostile demonstration or an overt act on the part of the person slain. See La.R.S. 15:482.
Defendant contends that through this testimony she wished to establish the suicidal tendencies of the deceased. She also argues that she was entitled, through the testimony of this witness, to corroborate the portions of her confession in which she related that the deceased frequently threatened to kill her and once attacked and injured her with an axe. The trial court ruled that it would allow testimony to show the suicidal tendencies of the deceased but would not allow testimony corroborating any contents of the confession, since its correctness and veracity had not been attacked by the State.
La.R.S. 15:482 and the jurisprudence applying and interpreting that statute render inadmissible evidence of a deceased's dangerous character unless the defendant can present evidence of a reasonably contemporaneous hostile demonstration or overt act. See, e.g., State v. Mitchell, 290 So.2d 829 (La.1974).
La.R.S. 15:484 prohibits corroboration of a witness before he has been sworn. The mitigatory statements contained in the defendant's confession were not contradicted by the State; there was, therefore, no need for corroboration. Cf. State v. Cato, 116 La. 195, 40 So. 633 (1906).
This assignment of errors lacks merit.

ASSIGNMENT OF ERRORS NO. 8
This assignment of errors relates to the trial court's denial of the defendant's motion for a new trial. In support of that motion defendant argued that the State failed to prove that the rat poison which the defendant administered to the deceased contained arsenic, the substance which was determined to have caused death. She also reiterated the errors alleged in the foregoing assignments of errors and argued that the verdict reached was contrary to the law and the evidence.
The record reveals that after administering the poison to her husband, the defendant destroyed and burned the rat poison bottle and the remainder of its contents. Since there was no way to establish by direct evidence that the substance administered by the defendant in fact contained arsenic, the State's case was necessarily circumstantial. The circumstantial evidence warranted giving the case to the jury. The record does contain sufficient evidence to support the verdict.
For the reasons stated, the defendant's conviction and sentence are affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (holding La.C.Cr.P. art. 402 and La.Const. Art. VII, § 41 (1921) unconstitutional).
[3] 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).
[4] See Devall v. Louisiana, 420 U.S. 903, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975). The following excerpt from Lee is applicable in the instant case:

"In Devall v. Louisiana, 420 U.S. 903, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975), the Supreme Court dismissed the appeals of Jimmy and Charlotte Devall (a male and a female) for want of a substantial federal question, citing Daniel. The Court did not specifically address itself to the Equal Protection issue, but we assume from their dismissal of Charlotte Devall's appeal that Taylor does not apply retroactively to females either, under the ruling in Daniel.
"This writer and other members of this Court have long been of the opinion that exclusion of women from juries in trials of women defendants is a violation of the Equal Protection clause. However, we are constrained to abide by the mandate of the United States Supreme Court, and we therefore can find no merit in these two bills."