317 So.2d 168 (1975)
STATE of Louisiana
v.
Danny Joe EVANS.
No. 56092.
Supreme Court of Louisiana.
July 25, 1975.
D. G. Brunson, Holloway, Baker, Culpepper & Brunson, Jonesboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles B. Bice, Dist. Atty., Kermit M. Simmons, Asst. Dist. Atty., for plaintiff-appellee.
*169 CALOGERO, Justice.
Defendant appeals from a conviction of attempted armed robbery. He was found guilty by a unanimous jury verdict and was sentenced to four years at hard labor with credit for time served. Defendant has reserved three bills of exception.
On July 3, 1973, defendant along with two friends, Jackson Banburg and Richard Tarver, and in the company of his wife, participated in a futile attempt to rob the clerk at the Winnfield Hotel in Winnfield, Louisiana. Defendant and his wife remained in the car while Bamburg and Tarver, armed with a shotgun, entered the hotel, demanded money from the clerk, and left after realizing the hotel clerk had no money in his control. Defendant drove the car which Bamburg and Tarver used to escape the vicinity.
Bill of Exceptions No. 1.
Defendant alleges that the lower court erred in finding that the defendant's confession was voluntarily and intelligently given. He alleges that the fact that defendant was arrested and held in custody ten hours before he was questioned overcomes the state's evidence that the statement was made voluntarily.
Defendant was taken into custody at 1:45 a.m. on July 6, 1973. He was not questioned at that time. Ten hours later in the presence of his wife and Detective Ray Shell, he was questioned by Chief Percy W. Roberts, Jr., of the Winnfield Police Department. Chief Roberts testified that before he questioned defendant he read defendant his rights from a prepared form and that defendant himself read and signed the form. The form included the Miranda warnings and a waiver of rights. This document was also signed by Chief Roberts and Detective Shell as witnesses. Chief Roberts further testified that he did not influence the defendant through promise, duress, intimidation, menace, threats, or inducements; he testified that defendant understood he was making a statement. As the defendant was making the statement, Chief Roberts took notes and then typed up the statement. It was then read to the defendant and he read it himself. One mistake was erased and initialed by defendant. It was stipulated that Detective Shell's testimony would corroborate Chief Roberts' testimony.
Defendant put on no evidence at all to rebut the state's evidence that the written statement was given freely and voluntarily. Although the defendant did not take the stand, his wife did take the stand and was questioned about the statement she had given on July 6, 1973, at 11:00 a.m. Defense counsel asked her no questions about the circumstances surrounding her husband's statement. Indeed, defense counsel put forth no evidence at all on the subject of the voluntariness of the confession or the intelligent waiver of rights by defendant.[1]
The foundation demonstrating the admissibility of confessions and admissions must be laid by the state with affirmative proof. LSA-R.S. 15:451, 452. The state must establish by proof beyond a reasonable doubt that the requirements for voluntariness as set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been fulfilled. State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969). Although this is a heavy burden for the state to carry, the state in this case has done so. The uncontroverted and detailed testimony of police officers that the statement was freely given, in addition to a written statement that defendant understood *170 his rights and waived them, in the absence of any evidence to the contrary, indicate that defendant's statement was voluntarily and intelligently given and was properly admitted into evidence. State v. Traylor, 311 So.2d 847 (La.1975); State v. Shelby, 308 So.2d 279 (La.1975); State v. Navarre, 302 So.2d 273 (La.1974); State v. Link, 301 So.2d 339 (La.1974); State v. Forman, 271 So.2d 523 (La.1973).
Bill of Exceptions No. 1 is without merit.
Bill of Exceptions No. 2.
Defendant asserts that the lower court erred in overruling defendant's motion for a directed verdict. Defendant asserts that the state did not present any evidence of the guilt of the defendant as to essential elements of the crime charged.
La.C.Cr.P. Art. 778 provides the following:
"In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
"If the court denies a defendant's motion for a directed verdict or judgment of acquittal at the close of the state's case, the defendant may offer his evidence in defense."
This Court in the case of State v. Douglas, 278 So.2d 485, 491 (La.1973) construed the phrase "insufficient to sustain a conviction" to mean that "the prosecution has produced no evidence to prove a crime or an essential element" thereof. It is only in cases where there is no evidence of the crime or of an element of the crime that this Court has the power to find meritorious a motion for directed verdict and reverse a conviction. If the only issue is the sufficiency of the evidence to prove guilt beyond a reasonable doubt, this Court cannot review the determination of the jury, because sufficiency is a question of fact and as such is within the province of the jury, not the Court. State v. Watson, La., 301 So.2d 653, 1974; State v. Occhipinti, 296 So.2d 283 (La.1974); State v. Frierson, 302 So.2d 605 (La.1974). If the record shows that any admissible evidence was introduced by the prosecution which could be understood by a jury to prove each element of the crime charged, the motion for a directed verdict should be denied. State v. Pryor, 306 So.2d 675 (La.1975); State v. Occhipinti, 296 So.2d 283 (La.1974); State v. Frierson, 302 So.2d 605 (La.1974).
The issue which the defendant evidently intended to raise in this appeal is whether any evidence was introduced to prove that defendant Evans did aid and abet Bamburg and Tarver in their attempted armed robbery of the clerk at the Winnfield Hotel.[2]
*171 This evidence was before the jury: defendant was Bamburg's cousin; defendant drove the car which brought Bamburg and Tarver to the hotel and which drove them away from the hotel after the attempted robbery; defendant suggested that the hotel clerk would be an easy victim for a robbery; defendant advanced the plan that he drive the car; defendant knew that Bamburg and Tarver had a gun and planned to rob the hotel clerk; defendant drove in a circular route after Bamburg and Tarver got out at the hotel; defendant and his wife were dropped off at her mother's house after the robbery attempt had failed.
This testimony was evidence, as well as defendant's statement to police which was only in minor particulars different from the implicating testimony of co-perpetrators Bamburg and Tarver. Both the testimony and the statement constitute evidence on which a jury could base a finding that the accused was guilty of attempted armed robbery. This is far from the total lack of evidence which would require this Court to reverse the trial court's denial of a directed verdict.
This bill is without merit.
Bill of Exceptions No. 3.
This bill was reserved by defendant when the trial court refused to allow defense witness Ja Man Y. Bamburg to testify as to statements made to him by state's witness Richard Tarver who was a participant in the attempted armed robbery. Tarver's testimony was damaging to defendant, and defendant argues here that these previous statements made to Mr. Bamburg were inconsistent with the damaging testimony given in Court. The trial judge sustained the state's objection to Mr. Bamburg's testimony.
In order for testimony of a prior inconsistent statement of a witness to be admissible, a foundation for that testimony must be laid as required by R.S. 15:493.[3] *172 State v. Smith, La., 301 So.2d 594, decided October 11, 1974. During cross-examination of witness Tarver, the defense counsel made no attempt to question him about any prior inconsistent statements or any statements to Ja Man Y. Bamburg. Thus, no foundation was laid for the introduction of an inconsistent statement. In the case of State v. Lewis, 288 So.2d 348 (La.1974), a unanimous Court held that the trial court correctly sustained the state's objection to testimony by a defense witness concerning statements allegedly made by a state's witness. Because the defense counsel had made no attempt to impeach the witness' testimony or to lay a foundation for the introduction of prior inconsistent statements, the Court upheld the trial court's ruling.
This bill is without merit.
For the above assigned reasons the conviction and sentence are affirmed.
NOTES
[1] After the state laid its predicate for the introduction of the statement, defense counsel did ask Chief Roberts this question on cross-examination:

"Q. Did he specifically and clearly and freely and unequivocally tell you that he didn't want a lawyer under any circumstances?"
The recorded answer was:
"A. This was a, I read him these rights here, and what he had a right to."
[2] There are three criminal statutes relevant to this case. They are the following:

R.S. 14:64 Armed robbery
A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.
R.S. 14:27 Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than twenty years;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is theft or receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
R.S. 14:24 Principals
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
[3] R.S. 15:493 reads as follows:

Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.