**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carson Eugene TYLER, Defendant-Appellant.**

No. 72–3045
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 5, 1973.

Rehearing Denied March 29, 1973.

22. *Id.*, at 361, 88 S.Ct., at 516, Harlan, J., concurring.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

John McGuigan, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Eugene A. Medori, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

PER CURIAM:

Carson Tyler was convicted after a jury trial in federal district court of receiving and possessing property with a value in excess of $100 which had been stolen from a federally insured savings and loan association, in violation of 18 U.S.C. § 2113(c). The stolen property in question consisted of unsigned travelers' checks with a face value of $4,000. The prosecution attempted to prove at the trial that Tyler was instrumental in arranging and carrying out the transfer of the stolen checks to one Harvey Allen Ward, who then passed them to John Harold. Harold cashed several of the checks for their face value of $400. Tyler contends on this appeal that: (1) the evidence was insufficient to show that the stolen property had a value in excess of $100; (2) the trial court erred in failing to instruct the jury on the standard to be used in measuring value; (3) the evidence was insufficient to show that he had possessed the stolen property. We affirm the conviction.

The burden of proving the value of the stolen property was, of course, on the government. United States v. Bryant, 4 Cir. 1971, 454 F.2d 248. Tyler stresses that he did not cash the checks, and that there is no evidence that he himself expected to realize any profit from them. He argues that the checks had no fixed value whatever until the person cashing them actually signed them. He asserts that, as far as he knew, the parties to whom he allegedly supplied the checks might have intended to sell them on the underworld market, or otherwise dispose of them, for a sum of less than $100.

Value may be proved by circumstantial evidence. Jalbert v. United States, 5 Cir. 1967, 375 F.2d 125. The evidence of value in this case was sufficient to support the jury's verdict. The travelers' checks had a fixed face value, and thus at least a potential worth, of well in excess of $100. This in itself is persuasive evidence that their value exceeded $100. See Churder v. United States, 8 Cir. 1968, 387 F.2d 825, 833. Moreover, the conduct of the parties to this transaction strongly suggested that all of them understood that the checks would be cashed for their face value. Harold, who actually cashed the checks, expected to realize between $1,500 and $1,800 from his activities. In view of the evidence introduced by the government that Tyler met with Ward and arranged the transfer of the checks to Harold, and that Harold was to contact Tyler after he disposed of the checks, the jury could have concluded justifiably

that Tyler, as well as the other parties, knew that the checks would be worth more than $100. See United States v. Bullock, 5 Cir. 1971, 451 F.2d 884; Jalbert v. United States, *supra*.

■ Tyler also objects to the trial court's failure to instruct the jury as to what standard—face value or possible value on the thieves' market—they should apply in assessing the value of the checks. He failed to raise this objection below, however. Given the clear evidence that the checks in fact had and were considered by all parties as having a value of more than $100, the court's failure to give specific instructions on measuring value was not plain error. United States v. Devall, 5 Cir. 1972, 462 F.2d 137, 143.

■■ Tyler's contention that he never possessed the stolen checks required him to explain the presence of one of his fingerprints on the back of one of the checks. At the trial he introduced two witnesses, the Feins, who testified that the checks were handed to Tyler at a party, apparently in fun, and that he immediately handed them back. Tyler also seeks to explain testimony that he physically carried the package of checks to Ward by asserting that he was an innocent messenger.

On the basis of all the evidence, however, the jury could reasonably conclude that Tyler was something more than an innocent participant in this transaction. The jury was free to disbelieve the testimony of the Feins and draw an inference of actual possession from the presence of Tyler's fingerprint on the check. Stoppelli v. United States, 9 Cir. 1950, 183 F.2d 391, cert. denied, 1950, 340 U. S. 864, 71 S.Ct. 88, 95 L.Ed. 631. Furthermore, given the testimony that Tyler had pre-arranged the actual transfer of the checks with Ward and that Harold was to contact Tyler after disposing of the checks, the jury had adequate evidence on which to base a finding of constructive possession. See United States v. Virciglio, 5 Cir. 1971, 441 F.2d 1295; Feinstein v. United States, 8 Cir. 1968, 390 F.2d 50, 54, cert. denied sub nom. Jackson v. United States, 1968, 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405.

The judgment of the district court is affirmed.