[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12208
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cr-60309-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE ACEVEDO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2021)

Before MARTIN, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

A jury convicted Jorge Acevedo of possessing 15 or more unauthorized access devices, possessing access device-making equipment, and aggravated identity theft. Following his convictions, the district court imposed a sentence of 45 months' imprisonment. Acevedo appeals his convictions and his resulting sentence, arguing that the district court erred in admitting evidence of his prior uncharged conduct at trial, denying his motion for judgment of acquittal, and calculating the loss amount for which it held him accountable at sentencing. Acevedo also argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I.    BACKGROUND

Acevedo was indicted and charged with two counts of possessing 15 or more unauthorized access devices,[1] in violation of 18 U.S.C. § 1029(a)(3) (Counts One and Three); two counts of possessing access device-making equipment,[2] in violation of 18 U.S.C. § 1029(a)(4) (Counts Two and Four); and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a) (Counts Five and Six). Specifically, the indictment alleged that on two occasions, Acevedo used a credit card skimming device to obtain more than 15 credit and debit card account

---

[1] The definition of "access device" includes credit cards, debit cards, and bank account numbers. *United States v. Wright*, 862 F.3d 1265, 1275 (11th Cir. 2017) (collecting cases); *see also* 18 U.S.C. § 1029(e)(1).

[2] "Device-making equipment" means any equipment designed or primarily used for making an access device or a counterfeit access device. 18 U.S.C. § 1029(e)(6).

2

numbers issued to other people. The underlying criminal complaint alleged that on both occasions Acevedo had installed a credit card skimmer in a gas pump at a Chevron gas station in Coral Springs, Florida. After a three-day trial, a jury found Acevedo guilty on all counts. We begin by summarizing the evidence adduced at trial, including the evidence introduced under Federal Rule of Evidence 404(b). We then review the post-conviction proceedings.

## A. The Criminal Trial

### a. Pre-Trial Dispute Regarding Admission of Prior Conduct Under Rule 404(b)

Before Acevedo's trial began, the government announced its intent to introduce evidence under Federal Rule of Evidence 404(b) of two prior uncharged incidents where Acevedo allegedly installed or attempted to install credit card skimmers in gas pumps. The government sought to introduce this evidence to prove Acevedo's identity, *modus operandi*, knowledge, motive, intent, and lack of mistake. As to the first incident, the government alleged that police found a skimmer in a gas pump at a Valero gas station ("Valero station") in Coral Springs. The pump's protective seal had been tampered with and Acevedo's fingerprint was later found on the seal. The second incident occurred about six months later; a gas station attendant observed a man attempting to open a pump at a Chevron gas station ("Chevron station"), which was across the street from the Valero station. When the witness told the man to stop, he got into a van and left. The police did

3

not find a skimmer in the pump, but they investigated the van's tag number and found that Acevedo was one of its authorized drivers. The witness then identified Acevedo as the man he saw trying to open the gas pump.

Acevedo objected to the admission of this evidence, arguing that the government had not established a proper purpose for admitting it, that it was unduly prejudicial, and that it was not inextricably intertwined with the charged conduct.

The district court reserved ruling on whether to admit the proffered 404(b) evidence until after the government presented its case in chief. After hearing government's case, the court, over Acevedo's objection, allowed the government to introduce the 404(b) evidence. The court concluded that the prior uncharged conduct was being offered to establish Acevedo's identity and *modus operandi* and that the jury could find by a preponderance of the evidence that Acevedo had committed the conduct. The court also determined that the probative value of this evidence was not substantially outweighed by undue prejudice to Acevedo and that the acts were not so remote in time as to be no longer probative or relevant.

### b. The Trial

The government presented the following evidence at trial. Ana Ribeiro, a former manager at the Chevron station, testified that one day a customer complained that someone had "skimmed" his credit card while he was at the gas

station.  Doc. 73 at 114.[3]  In response, Ribeiro went to check the gas pump; she

observed that the seal on the pump had been broken and when she opened the

pump, she saw a skimmer inside.  Ribeiro then called the police.  A crime scene

technician who responded to Ribeiro's call testified that she lifted a latent

fingerprint from the skimmer, and a fingerprint examiner testified that the print

matched Acevedo's fingerprint.

Roberto Rodriguez, a gas station repairperson, testified that about six weeks

after the first skimmer was discovered, another skimmer was found at the Chevron

station inside a gas pump.  A second crime scene technician testified that she lifted

a fingerprint from the skimmer, and the fingerprint examiner testified that this print

matched Acevedo's.

Craig Williams, a Special Agent with the United States Secret Service,

testified that a skimmer has no legitimate purpose.  He explained that a skimmer,

when connected to a legitimate credit card reader, "skims" or reads the data (the

account holder's name and account number) on credit cards passed through the

reader.  The skimmer stores the data directly and can also transmit the data to

another device via Bluetooth.  Williams testified that the two skimmers found at

the Chevron station stored more than 30 account numbers, including accounts

belonging to B.D. and J.D.  B.D. and J.D. both testified that they had used their

---

[3] "Doc." numbers refer to the district court's docket entries.

credit cards to buy gas at the Chevron station during the relevant period, their cards had not been lost or stolen, and they had never given Acevedo permission to possess their credit card accounts.

The government also introduced the abovementioned 404(b) evidence involving the two prior uncharged incidents. Williams testified that the two skimmers found at the Chevron station and the skimmer found at the Valero station all had Bluetooth capability. Williams extracted the data from all three skimmers (two from the charged acts and one from the uncharged act) and listed all the account numbers and names in a spreadsheet that was admitted into evidence. The spreadsheet listed 93 accounts numbers and names. Regarding the skimmer found at the Valero station, Williams testified that it contained over 15 account numbers, including accounts belonging to F.P. and J.E. F.P. and J.E. both testified that they had used their credit cards to buy gas at the Valero station during the relevant period, their cards had not been lost or stolen, and they had never given Acevedo permission to possess their credit card accounts.

The government then rested its case, and Acevedo moved for a judgment of acquittal, which the district court denied. After the parties' closing arguments, the court instructed the members of the jury that although they could consider evidence of past acts similar to those with which Acevedo was currently charged, they could not convict him simply because they believed he may have committed

6

the past uncharged acts. The jury returned a verdict convicting Acevedo on all counts.

### B. Presentence Investigation Report and Sentencing

Before sentencing, the probation office prepared a presentence investigation report ("PSR"). The PSR determined that the three skimmers collectively contained 93 pieces of personal identification information (credit card account information). It noted that law enforcement spoke to 15 victims who confirmed that Acevedo was not permitted to access their credit card information. And it determined that the total loss amount was $46,500—$500 for each of the 93 unauthorized access devices. *See* U.S.S.G § 2B1.1 cmt. n.3(F)(i) ("In a case involving any counterfeit access device or unauthorized access device, loss . . . shall be not less than $500 per access device.").

Based on Acevedo's convictions, the PSR applied a base offense level of six. *See id.* § 2B1.1(a)(2). The PSR recommended several enhancements to the base offense level: a six-level enhancement because the loss amount was between $40,000 and $95,000, *id.* § 2B1.1(b)(1)(D); a two-level enhancement because the offense involved more than 10 victims, *id.* § 2B1.1(b)(2)(A); and a two-level enhancement because the offense involved the possession or use of device-making equipment, *id.* § 2B1.1(b)(11)(A)(i). After applying these enhancements, Acevedo's total offense level was 16. The PSR arrived at a criminal history score

of zero, resulting in a criminal history category of I.  Based on his total offense level and criminal history category of I, Acevedo's recommended range of imprisonment under the Sentencing Guidelines was 21 to 27 months.  The PSR noted that Counts Five and Six carried a mandatory consecutive term of two years' imprisonment, although the district court had discretion to run the mandatory terms concurrently.  *See* 18 U.S.C. § 1028A(a)(1), (b); U.S.S.G. § 2B1.6 cmt. n.1(B).

Acevedo objected to two of the enhancements.  First, he objected to the loss amount calculation, arguing that the government offered no evidence that he used the credit cards and that credit card account numbers were not considered access devices for the purpose of calculating a loss amount.  Second, he objected to the enhancement for the number of victims, contending that the government could not establish that the offense involved 10 or more victims.  The government argued in response that the PSR correctly calculated the loss amount but agreed that it could not establish that the offense involved more than 10 victims.  The government thus conceded that Acevedo's total offense level should be lowered to 14.

At the sentencing hearing, the district court overruled Acevedo's objection to the loss amount, concluding that based on the testimony and evidence adduced at trial the PSR's calculation was appropriate.  The court determined that Acevedo's total offense level was 14, his criminal history category was I, his Sentencing Guidelines range was 15 to 21 months' imprisonment, and he was

subject to a mandatory consecutive sentence of 24 months as to Counts Five and Six.

Acevedo, though his counsel, requested a downward variance, arguing that the mandatory two-year sentence was appropriate given his lack of criminal history and the fact that the offense resulted in minimal economic harm and reflected a lack of sophistication. The government requested a 69-month sentence—21 months as to Counts One to Four and two years to run consecutively as to each of Counts Five and Six. The government emphasized that Acevedo's conduct was sophisticated, the conduct took "great effort," and Acevedo failed to accept responsibility. Doc. 71 at 17.

Before imposing a sentence, the district court noted that it had considered the facts and circumstances surrounding the offense, the parties' statements, the 18 U.S.C. § 3553(a) factors, and Acevedo's PSR. The court then sentenced Acevedo to 45 months' imprisonment: concurrent terms of 21 months as to Counts One to Four and a consecutive term of 24 months as to Counts Five and Six.

This is Acevedo's appeal.

## II.    STANDARDS OF REVIEW

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Rushin*, 844 F.3d 933, 941 (11th Cir. 2016). "The district court has broad discretion to determine the relevance and admissibility of any given

9

piece of evidence." *United States v. Clay*, 832 F.3d 1259, 1314 (11th Cir. 2016) (internal quotation marks omitted).

We review *de novo* the denial of a motion for judgment of acquittal based on insufficiency of the evidence, "viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility determinations in the government's favor." *United States v. Green*, 981 F.3d 945, 960 (11th Cir. 2020). The jury's verdict must be affirmed unless no reasonable trier of fact could have reached a conclusion of guilt beyond a reasonable doubt. *Id.*

With respect to sentencing issues, we review a district court's legal determinations *de novo* and its application of the guidelines to the facts for clear error. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136–37 (11th Cir. 2004). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

### III.   DISCUSSION

On appeal, Acevedo raises several challenges to his convictions and

sentence.  First, we address the challenges related to Acevedo's convictions; second, we review the challenges pertaining to his sentence.

## A. Acevedo's Convictions

Acevedo argues that the district court (1) abused its discretion in admitting evidence of similar uncharged incidents under Fed. R. Evid. 404(b) and (2) erred in denying his motion for judgment of acquittal based on insufficiency of the evidence.  For the reasons set forth below, we disagree.

### a.  Admission of Uncharged Incidents

Acevedo argues that the district court abused its discretion in admitting, under Rule 404(b), evidence of two uncharged prior incidents.  He contends that the government failed to establish he committed the uncharged acts, that the acts were not relevant to establish his identity, and that the evidence was unduly prejudicial.  We disagree.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  For evidence of other crimes or acts to be admissible under Rule 404(b), "(1) it must be relevant to an

11

issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy [Fed. R. Evid.] 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

The test for whether Rule 404(b) evidence should be admitted varies depending on the purpose for which it is offered. *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010). Evidence offered to prove identity must satisfy a "particularly stringent analysis." *Id.* (internal quotation marks omitted). When extrinsic evidence is offered to prove identity, the "crucial consideration" is the similarity between the charged crime and the prior act. *United States v. Miller*, 959 F.2d 1535, 1539 (11th Cir. 1992). "The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi." *Id*. (internal quotation marks omitted). "The extrinsic act must be a signature crime, and the defendant must have used a modus operandi that is uniquely his." *Phaknikone*, 605 F.3d at 1108 (internal quotation marks omitted). The government must, therefore, show more than simply that the defendant has at other times committed the same "commonplace variety of criminal act." *Id.* (internal quotation marks omitted).

Here, the district court did not abuse its discretion in admitting the 404(b) evidence of the two prior incidents at the Valero and Chevron stations because the evidence was relevant to prove Acevedo's identity and *modus operandi*. The two uncharged acts were strikingly similar to the incidents charged in the indictment. They both occurred within a year of the first incident charged in the indictment and within the same geographic area. What is more, the first uncharged incident was essentially identical to the two charged acts—a credit card skimmer was found inside a gas pump and Acevedo's fingerprint was found on the pump's broken seal. As to the second uncharged incident, Acevedo was identified by a witness as he was attempting to open a gas pump. The scheme marks Acevedo's "handiwork" as it does not appear to be so "commonplace" such that anyone could have committed the uncharged acts. *Id.* (internal quotation marks omitted). Further, any potential prejudice caused by admitting this evidence was mitigated by the district court's limiting instruction to the jury. *Edouard*, 485 F.3d at 1346.

**b. Sufficiency of the Evidence**

Acevedo contends that the district court erred by denying his motion for judgment of acquittal because the government failed to prove his guilt beyond a reasonable doubt. He argues that the government presented no evidence to establish he placed or had knowledge that someone else placed the skimmers inside the gas pumps and that the fingerprint evidence only proved that he touched

the components of the skimmers at some point.  We reject Acevedo's arguments.

As noted, we review the sufficiency of the evidence *de novo*, considering the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict.  *Green*, 981 F.3d at 960.  A jury is free to choose among reasonable constructions of the evidence.  *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014).  "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."  *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990).  Thus, we may not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013) (internal quotation marks omitted).  Further, the test for sufficiency of evidence is "identical regardless of whether the evidence is direct or circumstantial," and no distinction is made between the weight given to either direct or circumstantial evidence.  *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) (internal quotation marks omitted).  However, where the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict.  *Id.*  Applying this standard, we conclude that there was sufficient evidence to support Acevedo's convictions.

To sustain a conviction for Counts One and Three, the government was required to show that Acevedo knowingly and with intent to defraud possessed fifteen or more counterfeit or unauthorized access devices. 18 U.S.C. § 1029(a)(3). To convict Acevedo of Counts Two and Four, the government had to establish that he knowingly possessed device-making equipment with the intent to defraud. *Id.* § 1029(a)(4). And to sustain a conviction for Counts Five and Six, the government was required to prove that Acevedo knowingly transferred, possessed, or used the means of identification (including an access device) of another person, without lawful authority, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c). *United States v. Presendieu*, 880 F.3d 1228, 1240 (11th Cir. 2018); *see also* 18 U.S.C. § 1028A(a)(1). Section 1028A(c) includes fraud in connection with access devices under §§ 1029(a)(3) and (a)(4) as enumerated felonies. 18 U.S.C. § 1028A(c)(4).

Guilty knowledge "may be inferred from circumstantial evidence[] and the surrounding circumstances may supply inferences of knowledge which adequately prove intent." *United States v. Perez*, 698 F.2d 1168, 1170 (11th Cir. 1983) (internal quotation marks omitted). An "intent to defraud" involves an intent to "deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self." *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (internal quotation marks omitted). And

15

possession may be actual or constructive. *United States v. Delva*, 922 F.3d 1228, 1248 (11th Cir. 2019). "A person constructively possesses an item when he has knowledge of the thing possessed coupled with the ability to maintain control over it," or when he "exercises ownership, dominion, or control over the contraband." *Id.* (internal quotation marks omitted).

Here, there was sufficient evidence to convict Acevedo on all six counts. The government presented evidence that Acevedo's fingerprints were found on the two skimmers discovered at the Chevron station; the jury could thus reasonably conclude that he possessed the skimmers. *See United States v. Tyler*, 474 F.2d 1079, 1081 (5th Cir. 1973) (concluding that the jury was free to draw an inference of actual possession from the presence of defendant's fingerprint on a check).[4] The jury heard evidence that a witness saw Acevedo attempting to open a gas pump and then fleeing when told to stop. And based on Williams's testimony that skimmers have no lawful purpose and are used to capture credit card information that passes through legitimate credit card readers, it was not unreasonable for the jury to infer that Acevedo possessed the skimmers with the intent to defraud. Further, because the skimmers could transmit the credit card information via

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

Bluetooth, the jury could also infer that Acevedo had access to the 93 account numbers captured by the skimmers.

As to Acevedo's conviction for aggravated identity theft, in addition to the evidence listed above, the government established that the skimmers found at the Chevron station stored a total of more than 30 account numbers, including accounts belonging to B.D. and J.D. The jury heard B.D. and J.D. testify that they had used their credit cards to buy gas at the Chevron station during the relevant period, their cards had not been lost or stolen, and they had never given Acevedo permission to possess their credit card accounts. It was therefore reasonable for the jury to infer that Acevedo unlawfully possessed B.D.'s and J.D.'s means of identification in relation to possessing unauthorized access devices and access device-making equipment.

Viewing the above evidence in the light most favorable to the government, we cannot say the district court erred in denying Acevedo's motion for judgment of acquittal. *See Green*, 981 F.3d at 960. We thus affirm Acevedo's convictions on all counts.

## B. Acevedo's Sentence

Acevedo next challenges his 45-month sentence as procedurally and substantively unreasonable. Procedurally, he contends that the district court erred in calculating the loss amount as between $40,000 and $95,000. Substantively, he

17

argues that the district court imposed a sentence that was unreasonably severe.  As we explain below, we discern no error.

### a. Loss Amount

Acevedo contends that the district court erred in determining the loss amount of $46,500 because the government offered no evidence that he possessed the 93 credit card numbers.  We reject Acevedo's argument.

We review a district court's determination of the loss amount under the Sentencing Guidelines for clear error.  *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015).  Because the district court is in a unique position to assess the evidence and estimate the loss based upon that evidence, its loss determination is entitled to appropriate deference.  *United States v. Melgen*, 967 F.3d 1250, 1265 (11th Cir. 2020); U.S.S.G § 2B1.1, cmt. n.3(C).  The Guidelines define "loss" as the greater of "actual loss"—the reasonably foreseeable pecuniary harm that resulted from the offense—or "intended loss"—the pecuniary harm the defendant purposefully sought to inflict.  U.S.S.G § 2B1.1, cmt. n.3(A)(i), (ii).  The Guidelines do not require a precise determination of loss.  *Cavallo*, 790 F.3d at 1232.  Instead, the district court "need only make a reasonable estimate of the loss, given the available information."  *Id.* (internal quotation marks omitted).  The Guidelines state that if the case involved any counterfeit or unauthorized "access device," the loss includes "any unauthorized charges made . . . and shall be not less

18

than $500 per access device." U.S.S.G § 2B1.1, cmt. n.3(F)(i). Further, all relevant conduct, whether charged conduct or not, may be considered in determining the loss amount. *See United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007).

The district court did not clearly err in calculating the loss amount at $46,500. The court applied the lowest loss amount per access device permitted by the Sentencing Guidelines, *see* U.S.S.G. § 2B1.1, cmt. n.3(F)(i), and Acevedo has not shown the court clearly erred by using 93 access devices—the number of credit card accounts obtained across the three skimmers—as the basis for that calculation.

Therefore, we conclude that the district court did not plainly err when it calculated the loss amount and assessed Acevedo a six-level enhancement.

### b. Substantive Reasonableness of the Sentence

Acevedo asserts that his sentence is substantively unreasonable because his 45-month sentence was more than double the high end of the Guidelines range, and the district court offered only a "blanket statement" that it had considered the 18 U.S.C. § 3553(a) factors. We reject his argument.

We review for abuse of discretion whether a sentence is substantively unreasonable by considering the totality of the circumstances, including "whether

19

the statutory factors in § 3553(a) support the sentence in question."[5]  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  We will not "second guess the weight (or lack thereof) that [a district court] accorded to a given factor . . . as long as the sentence ultimately imposed is reasonable in light of *all* the circumstances presented."  *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (internal quotation marks omitted).  We may vacate a sentence only if we firmly believe that the district court "committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (internal quotation marks omitted).  The party challenging the sentence bears the burden of showing it is unreasonable.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  And a sentence that is within the Guidelines range and well below the statutory maximum penalty is usually reasonable.  *See United States v. Whyte*, 928 F.3d 1317, 1338 (11th Cir. 2019) ("We ordinarily expect that a sentence within the Guidelines is reasonable."); *Gonzalez*, 550 F.3d at 1324

---

[5] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute.  These purposes include the need to:  reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a)(2).  The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  *Id.* § 3553(a)(1), (3)–(7).

(holding that the sentence was reasonable in part because it was well below the statutory maximum).

Here, the district court did not abuse its discretion in sentencing Acevedo to 45 months' imprisonment.  Before imposing the sentence, the court expressed that it had considered the § 3553(a) factors, the PSR, the Guidelines range, and the parties' arguments.  The district court's statement is sufficient, as nothing "requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Docampo*, 573 F.3d 1091, 1100 (11th Cir. 2009) (internal quotation marks omitted).  Acevedo argues that the sentence imposed was "problematic" given his lack of criminal history, his acknowledgment of wrongdoing, and his familial support.  Appellant's Br. at 44.  But the weight the district court accords to "any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

Additionally, Acevedo argues that his 45-month sentence is outside the Guidelines range, but he fails to acknowledge that the district court was required to impose a mandatory two-year sentence for the aggravated identity theft counts to run consecutively to his other sentence.  *See* 18 U.S.C. § 1028A(a)(1), (b); U.S.S.G. § 2B1.6 cmt. n.1.  Acevedo's remaining sentence, 21 months for Counts

21

One to Four, was within the Guidelines range and well below the 120-month statutory maximum for possession of unauthorized access devices and the 180-month statutory maximum for possession of device-making equipment, *see* 18 U.S.C. § 1029(c)(1)(A)(i)–(ii), which supports a finding of reasonableness, *see Whyte*, 928 F.3d at 1338; *Gonzalez*, 550 F.3d at 1324.

We cannot conclude from this record that the district court abused its discretion in imposing a 45-month sentence.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Acevedo's convictions and sentence.

**AFFIRMED.**